*578 OPINION OF THE COURT
Fuchsberg, J.
In the context of a request for disclosure of records of a volunteer fire department, this appeal calls upon us to further explore the reach of the Freedom of Information Law (Public Officers Law, art 6). A subsidiary question treats with the exemption the statute provides for matters constituting an unwarranted invasion of privacy (Public Officers Law, § 87, subd 2, par [b]).
The controversy out of which this case arose began when a staff writer for the Ossining Citizen Register, a subsidiary of petitioner Westchester Rockland Newspapers, called upon the chief of the volunteer fire department of the Village of Ossining and the heads of its fire companies for access to the records of a public lottery sponsored by the department. The chief of the department forwarded the inquiry to the village, whose records access officer denied the request on the ground that the department’s fund-raising activities were not related to its fire-fighting functions and thus not within the embrace of article 6. There then ensued an unsuccessful administrative appeal to the village’s corporation counsel, who raised the further objection that, since part of the proceeds of the lottery were disbursed to the families of needy or deceased firemen, disclosure would invade their privacy.
There followed this suit, styled as an article 78 proceeding against the records access officer and the Mayor and trustees of the village. In their opposing petition, the respondents not only reiterated the reasons they already had advanced for refusing to open the records but added that these were then no longer in their custody and control, but in that of the District Attorney of Westchester County; it appears that the latter’s possession was incident to an investigation of what all parties concede was the lottery’s violation of article 225 of the Penal Law. In due course, Special Term handed down its decision granting inspection, but effective as of the time the District Attorney returned the records to the village. Moreover, the order contained an exception. It permitted the village, before making the records available to the public, to delete details which would identify those who had received any of the funds on the basis of economic need. On cross appeals, the Appellate Division has since modified the order by removing the duty of deletion from the village and placing it in the hands of Special Term, where it was to be carried out *579 in camera. On the appeal to us, taken by the village officials alone, we see no reason to disturb the amended disposition. Our reasons follow.
We begin by rejecting respondents’ contention that, in applying the Freedom of Information Law, a distinction is to be made between a volunteer organization on which a local government relies for the performance of an essential public service, as is true of the fire department here, and on the other hand, an organic arm of government, when that is the channel through which such services are delivered. Key is the Legislature’s own unmistakably broad declaration that, "[a]s state and local government services increase and public problems become more sophisticated and complex and therefore harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible” (emphasis added; Public Officers Law, § 84).
True, the Legislature, in separately delineating the powers and duties of volunteer fire departments, for example, has nowhere included an obligation comparable to that spelled out in the Freedom of Information statute (see Village Law, art 10; see, also, 39 NY Jur, Municipal Corporations, §§ 560-588). But, absent a provision exempting volunteer fire departments from the reach of article 6 — and there is none — we attach no significance to the fact that these or other particular agencies, regular or volunteer, are not expressly included. For the successful implementation of the policies motivating the enactment of the Freedom of Information Law centers on goals as broad as the achievement of a more informed electorate and a more responsible and responsive officialdom. By their very nature such objectives cannot hope to be attained unless the measures taken to bring them about permeate the body politic to a point where they become the rule rather than the exception. The phrase "public accountability wherever and whenever feasible” therefore merely punctuates with explicitness what in any event is implicit.
Further light is cast on this question by the all-encompassing definition of what constitutes a governmental arm within the context of the statute. In this connection, subdivision 3 of section 86 of the Public Officers Law includes "any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or *580 proprietary function for the state or any one or more municipalities thereof’.[1]
The village officials nonetheless insist that, because the fire department engages in both governmental and private activities, the records of its nongovernmental functions in any event are unavailable to Freedom of Information requestors. Further examination of the statute readily refutes that notion.
As presently constituted, article 6 declares all agency records open to the public unless they fall within one of eight categories of exemptions (Public Officers Law, § 87, subd 2). Thus, in contrast to earlier versions of the statute,[2] the burden of demonstrating that the material requested is exempt now falls squarely on the shoulders of the one who asserts it (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). Put another way, in the absence of specific statutory protection for the requested material, the Freedom of Information Law compels disclosure, not concealment.
So measured, we first note that none of the enumerated exemptions are availing: No State or Federal statute specifically exempts the records from disclosure; there is no danger of impairment of contract awards or collective bargaining negotiations; they are not trade secrets; they were not compiled for law enforcement purposes; their disclosure would not endanger the life or safety of any person; they are not inter- or intra-agency materials of the type specified in section 87; and they are not examination questions or answers. And, beyond such information as identifies the recipients of lottery funds as economically needy — data which petitioner no longer argues should be released — the "unwarranted invasion of personal privacy” exemption is not challenged.
Nor has the village pointed to anything in the balance of the statute to support its nongovernmental function theory. *581 The statutory definition of "record” makes nothing turn on the purpose for which a document was produced or the function to which it relates.[3] This conclusion accords with the spirit as well as the letter of the statute. For not only are the expanding boundaries of governmental activity increasingly difficult to draw, but in perception, if not in actuality, there is bound to be considerable crossover between governmental and nongovernmental activities, especially where both are carried on by the same person or persons. The present case provides its own illustration. If we were to assume that a lottery and fire fighting were genetically separate and distinct activities, at what point, if at all, do we divorce the impact of the fact that the lottery is sponsored by the fire department from its success in soliciting subscriptions from the public? How often does the taxpayer-lottery participant view his purchase as his "tax” for the voluntary public service of safeguarding his or her home from fire? And what of the effect on confidence in government when this fund-raising effort, though seemingly an extracurricular event, ran afoul of our penal law?
Having thus dissolved the governmental versus nongovernmental dichotomy the respondents urged upon us, we turn our attention to the village’s insistence that the proceeding should have been dismissed because the records were in the possession of the District Attorney and not of either the village or its volunteer fire department.[4] But, temporary possession in another does not necessarily oust a permanent possessor of the control which would make it subject to the responsibilities imposed by the Freedom of Information Law (cf., e.g., 3 Powell, Real Property, par 428 [rights of licensor in property subject to license at will]; 5 NY Jur, Bailment [rev], §§ 33, 34 [rights of bailor in bailed property]). Without more, here the village’s admission that it expected the return of the records fully justifies the prospective aspect of Special Term’s order, granting petitioner a right of inspection upon their retransfer *582 to the village’s custody. Even if the same law were applicable, this case would be distinguishable from Kissinger v Reporters Committee (445 US 136), in which the agency had permanently surrendered control over its records and had no reason to expect their return.
Finally, we comment on the direction that Special Term conduct an in camera hearing to excise privacy impinging references to needy recipients of the lottery funds. This presents no new problem. Though the Freedom of Information Law specifies no procedures for implementing its guarantees, decisional law has repeatedly acknowledged the efficacy of this technique in appropriate circumstances (see Matter of Fink v Lefkowitz, 47 NY2d 567; Church of Scientology v State of New York, 46 NY2d 906; Matter of Westchester Rockland Newspapers v Mosczydlowski, 58 AD2d 234). Specifically, we find no abuse of discretion as a matter of law in withholding the prerogative of deletion from the village. It had its opportunity to do so before the commencement of this litigation, but refused, and it was well within the discretion of the Appellate Division to order the sensitive references to be deleted in as cool and uncontentious an atmosphere as possible.
For these reasons the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Meyer concur; Judge Gabrielli taking no part.
Order affirmed.

. This is the wording of the present version of the statute, which, though not in effect at the inception of suit, is now controlling (see Matter of Doolan v Board of Coop. Educational Servs., 2d Supervisory Dist. of Suffolk County, 48 NY2d 341, 344, n 1). However, the definition has been broad from the beginning (see former § 87 of L 1974, ch 578).

. Until its revision in 1977, the statute merely listed specific kinds of documents that agencies were affirmatively required to disclose (see former Public Officers Law, § 88, repealed L 1977, ch 933, § 1). Among these was one relating to records made available to the public by any other provision of law (former Public Officers Law, § 88; subd 1, par i). At Special Term petitioner placed particular emphasis on this provision, citing section 51 of the General Municipal Law to establish an independent right to disclosure.

. Subdivision 4 of section 86 of the Public Officers Law reads: "4. 'Record’ means any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes, or discs, rules, regulations or codes.”

. The respondents’ brief makes no point of the distinction between possession of records by the village and possession by the fire department (see Village Law, § 10-1008). We therefore treat the two entities as one for the purposes of access under the Freedom of Information Law.