OPINION OF THE COURT
Leonard A. Weiss, J.
These proceedings were commenced pursuant to CPLR article 78 seeking (1) reversal of a determination which denied petitioner access to: “all information and documents in the possession of the Commission of Corrections that have any relation to incidents of violence at Coxsackie Correctional Facility in the years 1977, 1978 and 1979, including but not limited to, any complaints the Commission has received from inmates, and your response thereto and the details of and results and reports of any and all investigations the Commission has done in response to complaints and incidents of violence”; and (2) ordering the respondent to give petitioner access to the requested records. This request was made by letter dated October 26, 1979. After an ex *87 change of further letters, respondent denied the request made under the New York State Freedom of Information Law (Public Officers Law, § 87, subd 1, par [b]) by letter dated November 28, 1979 from Stephen Chinlund, Chairman of the State Commission of Correction.
Respondent in his answer, alleges modification of his previous denial in a letter to petitioner dated June 26, 1980 which followed a letter to respondent from the New York State Committee on Public Access to Records dated April 7, 1980 which evaluated petitioner’s position. Sent to petitioner was a list of documents concerning an incident at Coxsackie Correctional Facility on January 19, 1977 as well as many other documents available to petitioner. Respondent further alleges he has met with petitioner and tendered full co-operation, seeking only that petitioner be specific in its request for documents. On July 3, 1980, the executive director of Committee on Public Access to Records expressed approval to the respondent’s offer.
Petitioner’s reply disputes good faith attempts urged by respondent vehemently insisting she has been co-operative and charges respondent with bad faith by procrastination.
Effective September 1, 1974, the Legislature expressed its intent in the enactment of the Freedom of Information Law to be that government is the public’s business and that the public, individually and collectively and represented by a free news media, should have unimpaired access to the records of government. (Public Officers Law, former § 85.) This declaration was repeated when the new article 6 of the Public Officers Law was enacted in 1977 and set forth verbatim as section 84. Because of the myriad of requests for public records following the original law, modifications were also enacted into law by the 1977 Legislature which set forth definitions, guidelines and certain exemptions from public access affording protection of rights of privacy and other obvious protections required to maintain the orderly and efficient process of government. Each agency was directed to promulgate rules and regulations in conformity with and pertaining to the administration of the law. (Public Officers Law, § 87, subd 1, par [a].) Subdivision 2 of section 87 itemized those records to which public access *88 could be denied. The application of these sections has produced many lawsuits of which the instant case is one.
It appears throughout respondent’s communications and oral statements to petitioner during conferences held that respondent had two objections to the request for disclosure. The first dealt with the vagueness and lack of specificity of the documents sought. The second objection was that the process of reclamation and assimilation was too burdensome. The exchanges of letters and conversations did, however, result in the production of 33 certain documents bearing dates in January, 1977 with only one omission pursuant to section 87 (subd 2, par [a]) of the Public Officers Law, and four typewritten sheets identifying the recordkeeping methods of the department, together with an invitation to petitioner to request further documents specifically. Petitioner, being unsatisfied with this response, commenced the instant proceeding. This court has sought in vain for a New York case which clearly defines or delineates parameters by which the questions could be resolved. In Matter of Dunlea v Goldmark (54 AD2d 446, 449) a request for “budget examiner’s file” was held “not [to be] too vague and readily identified material”. The burden was shifted to the budget director to compile the documents and thereafter to assert his claim of statutory exemption. In Matter of Gannett Co. v County of Monroe (59 AD2d 309) the records sought were the names, job titles, and salary levels of county employees who were terminated in January, 1977. Dismissal of the petition seeking compliance was reversed on appeal. Writing for a unanimous court, Justice Denman said (supra, p 313) “If the county has never compiled a list of names of the terminated employees, the Freedom of Information Law does not require that one be prepared. (Matter of D’Alessandro v Unemployment Ins. Appeal Bd., 56 AD2d 762.) It was never intended that government agencies be burdened with the expense and effort of preparing records for distribution to the public. Petitioner must, however, be granted access to those lists and documents which specifically identify the employees to be terminated and effectuate their removal. Such result is consistent with the Legislature’s declaration ‘that government is the public’s business and that the public, individually and col *89 lectively and represented by a free news media, should have unimpaired access to the records of government.’ (Public Officers Law, § 85.)” (Emphasis provided.) Matter of Gannett would not appear to cast an obligation upon an agency to prepare a list or compilation of all available records, but instead allow access to one requesting information to all sources of such information in the agency’s files. However, the specific sources of such information were identified, i.e., payroll records, unlike the instant case.
In recognition of the Federal Freedom of Information Act (US Code, tit 5, § 552), as the precursor to New York’s statute, the court sought Federal cases which might shed light upon the parameters involved here.
In Sears v Gottschalk (502 F2d 122, 124) in an application made under the Freedom of Information Act (US Code, tit 5, § 552 [FOIA]), plaintiff a patent attorney sought to enjoin defendant from withholding “abandoned U.S. patent applications” from her and the public. The suit resulted from a request under FOIA by plaintiff to make available to her “all existing abandoned U.S. patent applications” which was denied on the ground that the matters sought were barred from disclosure by section 122 of title 35 of the United States Code. Although this case was decided on the question of exemption from disclosure pursuant to section 552 (subd [b], pars [3], [4]) of title 5 of the United States Code which protected trade secrets as privileged or confidential, the dictum contains language probative of the problem in the case at bar. Former section 522 (subd [a], par [3]) of title 5 of the United States Code states: “ [E] ach agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person.”
Gottschalk argues plaintiff’s request to inspect “all existing abandoned U.S. patent applications” was not a request for “identifiable records” within the meaning of the statute. The court was not persuaded by the argument that the request to inspect was so lacking in specificity that the records sought were not identifiable records, holding “The *90 purpose of the ‘identifiability’ requirement is to generate a ‘reasonable description enabling the Government employee to locate the requested records.’ Bristol-Myers Co. v. F.T.C., 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970) * * * Although plaintiff’s request was far reaching, that purpose was met.” (Sears v Gottschalk, 502 F2d 122, 125, supra.) The court went on to say (supra, pp 125-126): “We are not persuaded by defendant’s argument that plaintiff’s request to inspect was so lacking in specificity that the records sought were not ‘identifiable records’ within the meaning of § 552(a) (3). The purpose of the ‘identifiability’ requirement is to generate a ‘reasonable description enabling the Government employee to locate the requested records.’ Bristol-Myers Co. v. F.T.C., 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970) (quoting S.Rept.No. 813, 89th Cong., 1st Sess. at 8). Although plaintiff’s request was far reaching, that purpose was met. Aside from the sheer bulk of the material to which access was sought and the accompanying expense and inconvenience of making it available for inspection, defendant makes no claim that he does not know what plaintiff wishes to see or where to locate it. The case is thus different from Irons v. Schuyler, 151 U.S.App. D.C. 23, 465 F.2d 608 (1972), where access was sought to ‘all unpublished manuscript decisions of the Patent Office’ and where it appeared that there were more than 4,780,000 files, ‘any of which may contain one or more manuscript decisions.’ In that case, inspection was denied, but the decision turned on the difficulty of locating the requested records rather than the categorical nature of the request; we therefore, do not deem it controlling here. If otherwise locatable, the rule in this circuit is that equitable considerations of the costs, in time and money, of making records available for examination do not supply an excuse for non-production. Ethyl Corp. v. Environmental Protection Agency, 478 F.2d 47 (4 Cir. 1973); Wellford v. Hardin, 315 F.Supp. 175 (D.Md. 1970), aff’d 444 F.2d 21 (4 Cir. 1971). See also National Cable Television Ass’n, Inc. v. F. C. C., 156 U.S.App.D.C. 91, 479 F.2d 183 (1973); Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670 (1971).” (Emphasis supplied.)
National Cable Tel. Assn. v Federal Communications *91 Comm. (479 F2d 183) dealt with an application to compel the FCC to produce documents relating to rule making. Reversing the lower court denial, the United States Court of Appeals District of Columbia Circuit held where FCC public notices did not disclose the basis of decisions, request for production of documents used to determine or support elements of decision was phrased as specifically as public notices reasonably permitted, and the commission should have been required to identify, at least by relevant classes or subclasses, all documents that had been used to support proposed rule and then should have been required to establish which of those documents were exempt from disclosure. Chief Judge Bazelon relying upon the opinion in Bristol-Myers Co. v Federal Trade Comm. (424 F2d 935) wrote (supra, at p 192): “(1) If the agency has previously identified a class or category of documents in the normal course of its affairs, it must produce them in response to a request phrased in terms of the class or category. (2) If the agency has never segregated that class or category, production may be required where the agency may be able to identify that material with reasonable effort.
“Even where an agency has previously identified a class of materials, the passage of time may work such changes in the agency’s personnel and records that production requires that identification begin anew. In such circumstances, production may be required only if the task imposed on the agency is not unreasonable.” (Emphasis supplied.) Examination of Bristol-Myers Co. v Federal Trade Comm. (supra) is important as the leading case on the question of identifiability requirements in FOIA. That case was decided by the same court as National Cable Tel. Assn. v Federal Communications Comm. (supra) with Chief Judge Bazelon writing for the court. The rule to be gained from Bristol-Myers (supra, p 938) is: “The statutory requirement that a request for disclosure specify ‘identifiable records’ calls for ‘a reasonable description enabling the Government employee to locate the requested records,’ but it is ‘not to be used as a method of withholding records.’ ”
If we are to look to the Federal court decisions, the criteria would seem to be the ability of a Government employee to locate the records sought (Bristol-Myers Co. v Federal *92 Trade Comm., 424 F2d 935, supra) irregardless of the time, expense and effort required (Sears v Gottschalk, 502 F2d 122, supra). If the agency has previously identified the class or category of documents in the normal course of business, it must produce them in response to a request phrased in terms of the class or category (National Cable Tel. Assn. v Federal Communications Comm., 479 F2d 183, supra).
It is entirely plausible that respondent may have grounds upon which to invoke exemption from disclosure pursuant to statute. He should not be denied that right. In a most recent decision, the Court of Appeals on July 3, 1980 decided Matter of Westchester Rockland Newspapers v Kimball (50 NY2d 575). Judge Fuchsberg speaking for a unanimous court (Judge Gabrielli not taking part) held (supra, p 580): “As presently constituted, article 6 declares all agency records open to the public unless they fall within one of eight categories of exemptions (Public Officers Law, § 87, subd 2). Thus, in contrast to earlier versions of the statute, the burden of demonstrating that the material requested is exempt now falls squarely on the shoulders of the one who asserts it (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). Put another way, in the absence of specific statutory protection for the requested material, the Freedom of Information Law compels disclosure, not concealment.”
This court believes Mr. Chinlund, his attorneys and the State of New York Committee on Public Access to Records all are aware of these court decisions, and that he, Chinlund, despite his reluctance to permit petitioner to embark upon a fishing expedition through the commission’s files, is resigned to the eventuality of these proceedings. What he really seeks is time to comply.
Accordingly, this court will grant the relief sought with the following limitations: (1) respondent may if he elects, prepare a complete list of each document in his possession on the subject of incidents of violence involving inmates at Coxsackie Correctional Facility during the years 1977, 1978 and 1979 using commission employees to perform such work; or (2) respondent shall permit petitioner access to the commission records for the purpose of selecting the *93 documents she desires to have copied at her expense; (3) respondent before providing copies of documents selected by petitioner shall have the right to refuse examination or production of copies pursuant to exemptions specified in subdivision 2 of section 89 of the Public Officers Law; and~ (4) the respondent shall have a period of 120 days from the date of service of a copy of the order to be signed pursuant to this decision with notice of entry upon respondent or his attorney, within which to comply.
Attorney for petitioner to submit order.