DEBORAH J. HAWKINS, as Limited Administratrix of the Estate of HOWARD HAWKINS, Deceased, Respondent, v LAWRENCE T. KURLANDER, Appellant, and GENESEE HOSPITAL, Intervenor-Respondent.

Fourth Department, December 16, 1983

### APPEARANCES OF COUNSEL

*Howard R. Relin, District Attorney* (*Melvin Bressler* of counsel), for appellant.

*Faraci, Guadagnino, Lange & Johns* (*David A. Johns* of counsel), for respondent.

*Harris, Beach, Wilcox, Rubin & Levey* (*Joyce R. Parker* of counsel), for intervenor-respondent.

### OPINION OF THE COURT

DENMAN, J.

Petitioner's intestate died while undergoing surgery at Genesee Hospital. When another death and a near death

occurred under similar circumstances, it was discovered that the nitrous oxide and oxygen hoses used for the administration of anesthesia had been switched. Hospital personnel, believing that the hoses could not have been switched accidentally, requested respondent, then District Attorney of Monroe County, to conduct an investigation. With the co-operation of hospital administrators, respondent's investigators interviewed 36 witnesses, a number of whom were employees of the hospital, and stenographic transcripts were made of those interviews. Although suspicion focused on one employee, there was insufficient evidence for presentment to a Grand Jury and no criminal charges have ever been filed.

Petitioner commenced a wrongful death action against the hospital and others and sought transcripts of the interviews pursuant to the Freedom of Information Law (FOIL) (Public Officers Law, art 6). Respondent refused petitioner's request on the ground that the information was within the exemptions contained in the statute; however, he did provide the names and addresses of the witnesses interviewed. Petitioner then commenced this CPLR article 78 proceeding to review the determination of the District Attorney, and Special Term directed that the materials be turned over to petitioner, concluding that they were not within the exemptions in FOIL (117 Misc 2d 626). We find, to the contrary, that the material sought by petitioner is exempt under section 87 (subd 2, par [e]) of the Public Officers Law.

We recognize that the purpose of FOIL is to provide the public with access to information with respect to the manner in which the governmental decision-making process is conducted and that, in furtherance of that purpose, the provisions exempting governmental documents are to be narrowly construed (*Matter of Miracle Mile Assoc. v Yudelson,* 68 AD2d 176, mot for lv to app den 48 NY2d 706). In that regard, the burden of demonstrating that the material sought is exempt falls upon the party claiming the exemption (*Matter of Westchester Rockland Newspapers v Kimball,* 50 NY2d 575).

Respondent bases his denial of access to the transcripts on section 87 of the Public Officers Law which provides in pertinent part as follows:

"2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to, records or portions thereof that * * *

"[e] are compiled for law enforcement purposes and which, if disclosed, would:

"i. interfere with law enforcement investigations or judicial proceedings * * *

"iii. identify a confidential source or disclose confidential information relating to a criminal investigation".

In directing that the transcripts be disclosed, Special Term found (p 628) that the " 'law enforcement investigation' exemption" does not apply to this investigation because there is "no ongoing activity or imminent judicial proceeding." As to the objection that disclosure would breach the promise of confidentiality extended to the witnesses, Special Term concluded that the source of the information was no longer confidential because the names and addresses of the witnesses had been provided. We believe that Special Term's construction of the exemptions is unduly narrow and undercuts the intent of the Legislature in insulating such materials from public scrutiny.

The Federal Freedom of Information Act contains a similar exemption (US Code, tit 5, § 552, subd [b], par [7]). Inasmuch as FOIL was patterned after the Federal statute, Federal case law on the scope of this exemption is instructive (see *Matter of Fink v Lefkowitz,* 47 NY2d 567, 572). In *Pope v United States* (599 F2d 1383), the court stated that the law enforcement investigation exemption "is not rendered unavailable by the termination of the active investigation relating to these documents. A major purpose of the exemption is to encourage private citizens to furnish controversial information to government agencies by assuring confidentiality under certain circumstances" (*Pope v United States, supra,* p 1387; see, also, *Aspin v Department of Defense,* 491 F2d 24). To the same effect is *Frankel v Securities & Exch. Comm.* (460 F2d 813, 817, cert den 409 US 889) wherein the Court of Appeals for the Second Circuit noted that "[i]f an agency's investigatory files were obtainable without limitation after the investigation was

concluded, future law enforcement efforts by the agency could be seriously hindered."

We adopt that construction and view the circumstances presented here as precluding disclosure of these materials because of the chilling effect it would have on future investigations by the District Attorney. We note that had respondent opted to place this matter before the Grand Jury, petitioner would have been foreclosed from seeking the testimony of these witnesses (see *Matter of U. S. Air*, 97 AD2d 961; *Jones v State of New York*, 79 AD2d 273). Respondent states that a Grand Jury was not convened to investigate this matter because, at the outset, there was insufficient evidence to place before a Grand Jury and, more importantly, that he sought to prevent a possible suspect from being immunized by testifying before that body. Respondent therefore entered into an agreement with hospital administrators whereby they would co-operate with the investigation in exchange for confidentiality. The consequences of exposing the observations and suspicions of hospital personnel are self-evident. For a court to hold that a promise of confidentiality can be breached merely because the investigation did not lead to criminal charges would raise a red flag for future witnesses who might well decline to reveal confidences to the District Attorney because of the risk of public disclosure. Thus under both exemptions relied on by respondent, the testimony of these witnesses is exempt.

Petitioner's reliance on *Church of Scientology v State of New York* (61 AD2d 942, affd 46 NY2d 906) is misplaced. There the court permitted disclosure of the substance of reports made to the Attorney-General but protected the "confidential source" of those reports pursuant to the exemption in section 87 (subd 2, par [e], cl [iii]). Here the names of the witnesses have been disclosed to petitioner but it is the substance of their testimony which is afforded the protection of confidentiality.

Our determination that petitioner may not have access to the transcripts under FOIL does not prevent her from pursuing discovery under appropriate provisions of the CPLR; however, FOIL may not be used by a party in

litigation as a substitute for the liberal and varied discovery techniques provided by the CPLR.

Accordingly, the judgment should be reversed and the petition dismissed.

DOERR, J. (dissenting). I respectfully disagree. In my view, the majority has disregarded the significance of the 1977 amendment of article 6 of the Public Officers Law (L 1977, ch 933, § 1). The prior statute, insofar as is applicable here, provided that "[n]otwithstanding the provisions of subdivision one of this section, this article shall not apply to information that is * * * d. part of investigatory files compiled for law enforcement purposes" (Public Officers Law, § 88, subd 7, par d; see L 1974, ch 578, § 2; L 1974, ch 579, § 3). This blanket exemption has been replaced by a provision permitting denial of access to records compiled for law enforcement purposes only if disclosure would interfere with law enforcement investigations or judicial proceedings, or identify a confidential source or disclose confidential information relating to a criminal investigation (Public Officers Law, § 87, subd 2, par [e], cls [i], [iii]). The major impact of the amended statute was to shift the burden of proof from one seeking disclosure to the agency seeking concealment. Now, all documents are presumed discloseable and "[a]n agency resisting disclosure must furnish detailed affidavits or oral testimony to establish to the satisfaction of the trial court that the documents sought are exempt" (*Matter of Miracle Mile Assoc. v Yudelson,* 68 AD2d 176, 179, mot for lv to app den 48 NY2d 706; see, also, *Matter of Johnson Newspaper Corp. v Stainkamp,* 94 AD2d 825, 826). The affirmation of the District Attorney as well as the brief on appeal totally fail to make any factual demonstration that disclosure of the requested records would "interfere with" any criminal investigation or "disclose confidential information". Surely, more is required than the bald conclusory assertion that sources or information are confidential, otherwise the 1977 amendment has no vitality. *"There is no tender of any factual basis* on which to determine whether the materials sought either fell outside the scope of mandated disclosure * * * or come within the exceptions specified in subdivision 2 of present section 87 of the Public Officers Law" (*Church of*

*Scientology v State of New York,* 46 NY2d 906, 908; emphasis added). As I see it, respondent has simply failed to carry his burden of proof in claiming entitlement to the exemptions.

Nor is there any merit in respondent's assertion that the documents sought are confidential because the witnesses were promised confidentiality. The simple fact is that the investigation was commenced at the urging of the hospital which promised respondent only that it would provide the necessary witnesses. The names and addresses of the witnesses have already been given to petitioner so the confidential source exemption is not an issue. The confidential information exemption which the majority espouses has similarly lost its vigor. Transcripts of some 16 of the interviews with witnesses have already been turned over to and reviewed by the vice-president of the Genesee Hospital. The attorney for the hospital was present during the questioning of many of the witnesses. Moreover, the record shows that respondent has already revealed several reports summarizing what the investigation has disclosed. It is hard to imagine what information remains in the sought-after transcripts that could be characterized as "confidential". Certainly the court should not be required to speculate. It is of no moment that, as the majority observes, "had respondent opted to place this matter before the Grand Jury, petitioner would have been foreclosed from seeking the testimony of these witnesses". The matter was not presented to a Grand Jury and there remains an investigation which respondent describes as "open" while conceding there has been no activity in the matter for at least three years. No indication has been made that future activity is expected.

I find further disagreement with the contention that disclosure would have a "chilling effect" on future investigations since witnesses would be reluctant to come forward. A release of the instant records does not mean that law enforcement records would have to be released in subsequent cases. Every challenge to disclosure under FOIL is *sui generis* and dependent upon a showing of sufficient facts which can establish convincingly that the material sought is statutorily exempt. Thus, I do not disagree with the Federal cases holding that the statutory

exemption survives upon the termination of a criminal investigation. I merely disagree with the majority's legal analysis, which has the effect of giving to law enforcement records a blanket exemption with no statutory foundation. "[I]n the absence of specific statutory protection for the requested material, the Freedom of Information Law compels disclosure, not concealment" (*Matter of Westchester Rockland Newspapers v Kimball,* 50 NY2d 575, 580). I do not find "self-evident" the consequences of exposing the observations and suspicions of hospital personnel when these matters have already been disclosed in summary form and have lost their confidential nature.

Accordingly, I would affirm the order appealed from.

HANCOCK, JR., J. P., CALLAHAN and MOULE, JJ., concur with DENMAN, J.; DOERR, J., dissents and votes to affirm in an opinion.

Judgment reversed, without costs, and petition dismissed.