OPINION OF THE COURT
Lawrence E. Kahn, J.
In the above-captioned CPLR article 78 proceeding, petitioner seeks relief pursuant to Public Officers Law article 6, more commonly known as the Freedom of Information Law (FOIL). Specifically, it seeks to compel respondent to provide access to all records of former Mayor Erastus Corning (Mayor), for the period January 1, 1980 through June 1, 1983 (Corning Papers). Petitioner identifies its request as “records written, received or maintained by Mayor Corning, in other than his capacity as Mayor, including personal letters or correspondence to and from him in his capacity as Chairman of the Albany County Democratic Committee, inter-agency and intra-agency materials which are statistical or factual tabulations or data, instructions to staff that affect the public, final agency policy determinations * * * and records which are not specifically exempt pursuant to *711 the Freedom of Information Law.” Petitioner further seeks identification of documents which are not made available, the reasons therefore, and an in camera court review of such records.
Initially, it must be noted that the request is neither enhanced nor prejudiced by the fact that petitioner seeks records compiled and maintained by a person who is now deceased. The applicable statute makes no such differentiation. The question before the court is whether FOIL affords access to particular documents and records, not the person by whom or for whom they were created. If access is mandated, this is so regardless of whether the records are those of a former or present Mayor or other public official. While the court is certainly mindful of the tenure enjoyed by the late Erastus Corning, II, in the office of Mayor for the City of Albany, this unique circumstance is not germane to a resolution of the issues before the court.
Turning to the facts specifically at issue, it is clear that during his term as Mayor, Erastus Corning received, prepared, copied or stored certain papers at Albany City Hall. Upon his death, the Corning Papers were reviewed by various family members and city officials. Thereafter, certain items were delivered to the Mayor’s family, some were sent to the Albany Institute of History and Art, while others are stored at City Hall or the Hall of Records. After extensive indexing, a reporter for petitioner was granted access to those portions of the material stored at the City and County Hall of Records. This material is indexed by subject matter and year, stored in 328 boxes and consists of an estimated "900,000 documents. While the petition initially sought access to all this material, the request has been modified to include only records from January 1, 1980 through June 1, 1983.
After initial access was granted, respondents rescinded consent to universal inspection, segregating much of the material in a parallel file not available for public access, upon various claims of exemptions. Petitioner then followed the statutory process for review of the denial. Its appeal was rejected by respondent’s Freedom of Information Appeals Officer. However, thereafter, the bipartisan New York State Committee on Open Government (Committee) determined that “the ‘Corning Papers’ are, in their entirety, subject to the rights of access granted by the Freedom of Information Law.” This determination should be given deference and great weight (Matter of Washington Post Co. v New York State Ins. Dept., 114 Misc 2d 601, 603). The Committee’s opinion emphasized that the exemptions found in Public Officers Law § 87 (2) are permissive, not mandatory. Thus, even *712 if an exemption might be applicable to a specific document, the law does not require a withholding of the information, but rather, merely affords respondent the discretion to do so. Having exercised that discretion, he has the burden of justification therefore.
In 1974, the Legislature of the State of New York enacted the statute which has become our Magna Carta, upon the issue of openness in government and the right of its citizenry to monitor their elected officials. In Matter of Zanger v Chinlund (106 Misc 2d 86, 87), the Honorable Leonard A. Weiss, then sitting at Special Term, wrote that “the Legislature expressed its intent in the enactment of the Freedom of Information Law to be that government is the public’s business and that the public, individually and collectively and represented by a free news media, should have unimpaired access to the records of government.” The opinion canvassed the applicable case law upon issues directly relevant herein and granted access to “ ‘all information and documents in the possession of the Commission of Corrections that have any relation to incidents of violence at Coxsackie Correctional Facility in the years 1977, 1978 and 1979’ ” (p 86).
In the case at bar, initially, it is clear that the threshold issue of specificity has been achieved. FOIL requests are not held to the same degree of accuracy which is mandated for discovery in other civil litigation as envisioned by CPLR 3120. The designation need not be that precise (Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 82-83). To meet the criteria of reasonable identification, the description must be “sufficiently detailed to enable the respondent governmental agency to locate the records in question.” (Matter of Johnson Newspaper Corp. v Stainkamp, 94 AD2d 825, 826.) Certainly, petitioner need not identify each document which it seeks. Indeed, the existence of a specific record may not even be determinable in the first instance.
The parties acknowledge that the material sought is voluminous and its subject matter diverse in the extreme. However, that their request may require production of thousands of records is not sufficient to withhold disclosure (Matter of Farbman & Sons v New York City Health & Hosps. Corp., supra).
As aforesaid, the Committee has determined that the Corning Papers, in their entirety, fall within the parameters of accessibility afforded by FOIL. Nothing before the court is persuasive to abrogate this finding (Matter of Miracle Mile Assoc. v Yudelson, 68 AD2d 176). Respondent, in essence, conceded this issue, claiming that the statute’s enumerated exemptions allow him to *713 withhold access. In an effort to afford public access, respondent has taken substantial steps to index, catalog and review these extensive documents. No one can question the magnitude of the task. To date, respondent has completed indexing and sorting the files for portions of the years 1981, 19.82 and 1983.
In such instances, the proper procedure is for the agency to articulate particularized and specific justification for withholding the information. Here, the precise documents withheld have not been identified. Thus, to enable the court to make a reasoned determination with respect to respondent’s claimed exemptions, the requested materials must be submitted to the court for an in camera inspection (Matter of Fink v Lefkowitz, 47 NY2d 567). As in Zanger (106 Misc 2d 86, 92, supra), it would appear that respondent, “despite his reluctance to permit petitioner to embark upon a fishing expedition * * * is resigned to the eventuality of these proceedings.” As this court has written on a previous occasion, “Democracy, like a precious jewel, shines most brilliantly in the light of an open government.” (Daily Gazette Co. v Town Bd., 111 Misc 2d 303, 305.)
The petition for a judgment pursuant to article 78 shall be granted to the extent that respondent shall provide petitioner with access for inspection to all records of Erastus Corning, II, received or maintained by him during his tenure as Mayor of the City of Albany, for the period January 1, 1980 through June 1, 1983, which are known as the Corning Papers. Respondent shall separately identify any record which it deems exempt pursuant to specified provisions of the Freedom of Information Law, and furnish such documents to this court for an in camera review with respect thereto, within 60 days of service of an order, in conformance herewith, with leave to request additional time for compliance, if necessary.