In the Matter of CAPITAL NEWSPAPERS, DIVISION OF THE HEARST CORPORATION, Respondent, v THOMAS M. WHALEN, III, as Mayor of the City of Albany, et al., Appellants.

Third Department, November 21, 1985

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

### APPEARANCES OF COUNSEL

*Vincent J. McArdle, Jr. (W. Dennis Duggan* of counsel), for appellants.

*O'Connell & Aronowitz, P. C. (Peter L. Danziger* and *Mary O'Connor Donohue* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

The late Erastus Corning, II, was Mayor of the City of Albany for some 42 years until his death in 1983. During his later years in office he was also Chairman of the Albany County Democratic Committee. Over this historically lengthy tenure as Albany's chief executive, he collected and stored more than 900,000 documents and letters (the Corning papers) at his office in City Hall, including those relating to personal matters and to his activities as Democratic Committee Chairman. It is readily inferable from the record that Corning kept essentially exclusive control of his papers during his lifetime.

Following Corning's death, some of his personal correspondence was turned over to his family. The balance of the Corning papers was collected in over 300 cartons and transferred to the City Hall of Records, where the process of indexing, cataloging and segregating them by subject matter was begun. In August 1984, a reporter for petitioner's Albany evening newspaper, *The Knickerbocker News,* was granted access to the Corning papers by respondent Thomas M. Whalen, III, Corning's successor in office. Several documents were copied and became the subject of articles in that newspaper. Thereafter, respondents resisted further attempts by petitioner to obtain access, among which was the demand which is the subject of this proceeding, made pursuant to the State's Freedom of Information Law (Public Officers Law art 6; FOIL). Specifically, petitioner was advised that the processing of the papers had not been completed and that, eventually, access would be given to all documents except those

which related to Corning's personal affairs, to his position as Democratic Committee Chairman and those to which a specific statutory exemption from FOIL disclosure (Public Officers Law § 87 [2]) applies. This position was upheld by the city's freedom of information appeals officer.

Following the foregoing response to its disclosure demand, petitioner availed itself of FOIL's provision (Public Officers Law § 89) for seeking an advisory opinion of the State Committee on Open Government. The executive director of that body ruled that all of the Corning papers, including those personal in nature and relating solely to Democratic Party activities, were accessible under FOIL unless covered by a specific statutory exemption. He based this opinion on FOIL's definition of "record" as including "any information kept, held, filed, produced or reproduced by, with or for an agency" (Public Officers Law § 86 [4]), and the expansive interpretation of that definition by the courts (citing *Matter of Washington Post Co. v New York State Ins. Dept.,* 61 NY2d 557, 565; *Matter of Westchester Rockland Newspapers v Kimball,* 50 NY2d 575, 581). Since the city (admittedly a governmental unit to which FOIL applies) had physical custody of the Corning papers at a city office, it was reasoned that they were disclosable as *records kept* by an agency. Petitioner then pursued its statutory remedy to obtain court-ordered access (Public Officers Law § 89 [4] [b]) by initiating the instant proceeding. Its petition expressly seeks disclosure of personal letters and Corning's correspondence received or made in his capacity as Democratic Committee Chairman. Subsequently, petitioner limited its request to documents assembled from 1980 through 1983. Special Term (126 Misc 2d 710) essentially adopted the reasoning and conclusions of the opinion of the State Committee on Open Government as to Corning's personal and Democratic Party papers. It ordered an in camera inspection of all papers claimed by respondents to be immune from disclosure under one or more of the specific statutory exemptions. This appeal by respondents ensued.

█ Preliminarily, we reject respondents' contention that petitioner is not entitled to relief under FOIL because, in its demand, the records sought were not "reasonably described" (Public Officers Law § 89 [3]). All that is required descriptively is that the request be sufficiently detailed to permit the agency to locate the records in question *(Matter of Johnson Newspaper Corp. v Stainkamp,* 94 AD2d 825, 826, *mod* 61 NY2d 958).* Undisputably, the Corning papers for 1980-1983

were readily identifiable and their location is known. We also find untenable petitioner's argument that Special Term's order must be affirmed without reaching the merits because of respondents' failure to have detailed the specifics of their claim of exemption from disclosure as to each and every document sought. As previously noted, there is no real dispute between the parties that the Corning papers contain documents personal in nature or purely related to Corning's activities as Democratic Party leader. And Special Term, by its order of in camera inspection, accepted respondents' position that some of the papers fall under a specific statutory exemption. Given the sheer volume of documents requested and the time constraints for respondents' submission in opposition, we find a sufficient delineation of respondents' challenges to permit full review (cf. *Church of Scientology v State of New York,* 46 NY2d 906, 908).

We therefore turn to the dispositive issue on appeal, namely, whether Special Term was correct in extending public disclosure under FOIL to documents which were admittedly not made, held or used by Corning in his capacity as Mayor of the City of Albany, merely because of their location in a city facility in the physical custody of a city official. In resolving this issue, we agree with Special Term that nothing turns on the fact that the records sought are those of a deceased person. None of the parties has claimed otherwise and there has been no evidence submitted of the transfer of ownership of the Corning papers or that they are presently being held for other than preservation purposes and to sort out those documents which respondents have already agreed are disclosable under FOIL. These circumstances prevailing, we have concluded that Special Term and the State Committee on Open Government read the statute far too broadly in making Corning's personal and Democratic Party papers publicly accessible under FOIL. There is no basis to infer that any such farreaching public disclosure of nongovernmental activities was intended by that legislation. The declared legislative policy underlying FOIL was to fulfill "[t]he people's right to know the process of *governmental decision-making* and to review the documents and statistics leading to determinations" by providing "access to the records of *government*" (Public Officers Law § 84; emphasis supplied). The Governor's message of approval of the original FOIL enactment (L 1974, chs 578-580) similarly states that "[t]hese bills will provide, for the first time in New York State, a structure through which

citizens may gain access to the records *of government* and thereby gain insight into *its workings"* (Governor's Memorandum, 1974 NY Legis Ann, at 392; emphasis supplied).

Thus, as radical a departure from governmental secrecy as FOIL represents, the available evidence does not faintly support the proposition that the law was expected to cover the private papers of public officers clearly having no relationship to their conduct as such, except perhaps in the historical sense that every activity or experience of a public figure bears in some way on what he or she does in office. It is equally unlikely that the Legislature intended by FOIL to open up the inner workings of political parties or, indeed, that it could constitutionally do so without infringing upon 1st Amendment rights of free political association *(Democratic Party v Wisconsin,* 450 US 107, 122-123; *Gibson v Florida Legislative Comm.,* 372 US 539, 549; *National Assn. for Advancement of Colored People v Alabama,* 357 US 449, 462-463).

Petitioner does not claim that it would have *carte blanche* discovery of all of the Corning papers if they had been saved at Corning's home or at Albany County Democratic headquarters. Its argument for access is entirely dependent on the theory that FOIL's broad definition of "record" mandates disclosure because of the location of the papers at the facility of an "agency" subject to the act. Again, however, nothing in the legislative history suggests that a governmental official's private or political party documents were to be made subject to disclosure merely because of the happenstance of their storage on public property. It is unimaginable that the Legislature was unaware of the common practice of officeholders to maintain private files at their workplace for security purposes or as a matter of convenience. Nor can it be assumed that the Legislature was oblivious to the fact that many officials (State Legislators included) simultaneously hold local political party office and store party documents in the same fashion and for the same reasons.

Concededly, once information in tangible form is identified as that of a public agency, the broad definition of "record" and other provisions of FOIL presumptively mandate disclosure and the burden is on the agency resisting access to bring the materials within one of the enumerated statutory exemptions *(Matter of Westchester Rockland Newspapers v Kimball,* 50 NY2d 575, 580, *supra; Matter of Fink v Lefkowitz,* 47 NY2d 567, 571). However, the key provision of FOIL reflecting what we consider the proper dichotomy in treatment between non-

governmental records of an individual public official (wherever held or kept) and records fairly deemed to be that of a unit of government (also wherever held or kept) is not the definition of record, but of agency (Public Officers Law § 86 [3]). Significantly, an individual officeholder is not an agency as that term is statutorily defined. FOIL jurisdiction extends only to a "state or municipal *department* \* \* \* *office* or other governmental *entity* performing a governmental or proprietary function for the state or any one or more municipalities thereof" (Public Officers Law § 86 [3]; emphasis supplied). Obviously, a governmental entity can only perform its public responsibilities through those individual officers who act as its agents or representatives. Under familiar general agency principles and FOIL's strong policy favoring disclosure, documentary information produced, held or used by such a representative or agent of a governmental entity *in his or her capacity as such* should be subject to disclosure. In the case of a chief executive of a city, such as Erastus Corning, II, papers relating to a wide range of such an official's civic activities would be considered agency records. This would be so wherever *collected or held*; otherwise FOIL's purposes could easily be thwarted. On the other hand, the statute's omission of public *officeholders* from the definition of agency necessarily implies that records which are clearly or concededly *not* produced, held or used in their official capacities are not subject to FOIL disclosure, again wherever their location.

The case of *Matter of Westchester Rockland Newspapers v Kimball* (50 NY2d 575, *supra),* holding that disclosure was required of records of a village fire department's lottery activities, does not dictate the opposite result. The lottery in that case was admittedly an activity organized and undertaken by that fire department as such. The lottery records were collectively kept by the department. The Court of Appeals held in that case that the organized, collective activities of an agency subject to FOIL cannot be separated into governmental and nongovernmental functions for record-disclosure purposes. This follows because any activity of a public agency qua agency is a matter of legitimate public concern, the records of which are therefore made open by FOIL *(see, supra,* at p 581). The *Westchester Rockland* case simply did not address whether records of nongovernmental activities of individual members of the village fire department were publicly accessible.

Support for our conclusion that the mere location of an

official's private papers at an agency's premises is insufficient to convert them to agency records is found in judicial construction of the Federal Freedom of Information Act (5 USC § 552 *et seq.*) (FOIA), upon which FOIL was modeled *(see, Matter of Fink v Lefkowitz,* 47 NY2d 567, 572, n, *supra; Hawkins v Kurlander,* 98 AD2d 14, 16). In *Kissinger v Reporters Comm.* (445 US 136), the United States Supreme Court addressed, *inter alia,* whether memoranda of the telephone conversations of Henry Kissinger made when he was National Security Advisor lost their exempt status when, upon appointment as Secretary of State, he removed those papers to the State Department, an agency subject to FOIA. The Supreme Court held: "The papers were not in the control of the State Department at any time. They were not generated in the State Department. They never entered the State Department's files, and they were not used by the Department for any purpose. If mere physical location of papers and materials could confer status as an 'agency record' Kissinger's personal books, speeches, and all other memorabilia stored in his office would have been agency records subject to disclosure under the FOIA" (445 US, at p 157). Subsequent Federal decisions applying *Kissinger* make it clear that the basis of the Supreme Court's holding was that the Secretary's memoranda were excluded, not because they were not a record, but because they were not a record *of an agency* subject to FOIA, the very same distinction we make here *(Bureau of Natl. Affairs v United States Dept. of Justice,* 742 F2d 1484, 1489; *Wolfe v Department of Health & Human Servs.,* 711 F2d 1077, 1080-1081). Therefore, petitioner's effort to distinguish the Federal precedents on the basis of the absence of a definition of "record" in FOIA is unavailing.*

If we were to apply the *Kissinger* criteria to the portion of the Corning papers consisting solely of Corning's personal and Democratic Party documents, they would clearly not be records of an agency, i.e., of the Office of Mayor or of the City of Albany. Corning's personal and Democratic Party papers were not generated by the Office of Mayor or by the City of Albany as such, were not integrated into either entity's files nor have they been used in conducting either agency's business. The city's custody over the Corning papers, for purposes of preser-

---

* Similarly to FOIL, FOIA defines "agency" in terms of any "department * * * or other establishment in the executive branch of the Government * * * or any independent regulatory agency", and omits officeholders of those entities (5 USC § 552 [e]).

vation and to separate the disclosable from the nondisclosable portion thereof, seems hardly the kind of control the court in *Kissinger (supra)* envisaged as an indicator of records of an agency *(see, Berry v Department of Justice,* 733 F2d 1343, 1348-1349).

Consequently, Special Term erred in including Corning's personal and Democratic Party documents within its order of disclosure under FOIL, and the judgment must be modified accordingly. We are also of the view that Special Term's direction for wholesale in camera inspection of all documents, estimated to comprise as many as 60,000 pages for the years 1980-1983, is violative of principles of judicial economy. In camera inspection should be employed only in the rare case where the agency resisting disclosure, after providing a detailed description of the nature of the material sought, the purpose for which it was produced or used and similar relevant factors, fails to sustain its burden of showing that a specific statutory exemption applies or that the specific document is not a record of the agency *(Matter of Miracle Mile Assoc. v Yudelson,* 68 AD2d 176, 180). Respondents should be given the opportunity to make such a detailed showing here, under fair and reasonable time constraints to be set by Special Term. In camera inspection should be restricted to those documents whose status remains unresolved after each side's submissions are complete and the foregoing procedure has been exhausted. In ordering remittal for these purposes, we reject respondents' contention that recusal of the Justice sitting at Special Term is required because of his employment as an Assistant Corporation Counsel for the City of Albany prior to the years pertinent to petitioner's application.

KANE, J. P., CASEY, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as required disclosure of the papers of the late Erastus Corning, II, for the years 1980-1983 relating solely to his personal activities and those made or received in his capacity as Chairman of the Albany County Democratic Committee; matter remitted to Special Term for further proceedings not inconsistent herewith; and, as so modified, affirmed.