OPINION OF THE COURT
Elliott Golden, J.
In this CPLR article 78 proceeding, petitioner seeks an order compelling respondent to disclose records requested under the Freedom of Information Law (FOIL), Public Officers Law § 84 et seq. Upon the foregoing papers, and for the following reasons, the petition is granted.
Petitioner New York 1 News owns and operates a news cable television service in the City of New York. In October 1994, petitioner made a FOIL request to respondents for a "copy of the guilty verdict and investigation of 'racial insensitivity’ against former Borough Hall employee Raymond Hagemann sometime in October 1992 as described in public access television by Borough President Guy Molinari.” (Petition, exhibit C.) The reasons for petitioner’s interest in this material and the situation surrounding the request are set forth in the petition.
Prior to September 1994, Raymond Hagemann had been employed in the Office of Staten Island Borough President Guy Molinari as a project planner and member of the Investigations Unit. In July 1994, Hagemann had written to the Borough President’s Chief of Staff, demanding that she apolo *272 gize to the coach of a local sports program for "exhibiting unprofessional, racially insensitive attitudes toward him” (answer, exhibit 1). In September 1994, Borough President Molinari fired Hagemann, and several days later, the Chief of Investigations, Bill Franz, and the Chief of Administration, Jack O’Hara, both resigned, citing Hagemann’s firing as a reason for their actions.
In a public statement concerning Hagemann’s firing, Borough President Molinari said: "If someone working for me is racially insensitive I don’t want them to be working for me. But, at the same time, it’s a terrible thing to charge someone with being racially insensitive. I don’t expect it to happen with members of my own staff.” (Petition para 10.) Thereafter, on a public access cable television channel, Borough President Molinari stated: "While we are on the issue of racial insensitivity, and since that issue has dominated the press accounts of what happened here, there is a prior incident that should be mentioned. In October of 1992 Raymond Hagemann was accused of racial insensitivity against an African-American employee that works here at Borough Hall. There again I had instructed my counsel to conduct an investigation, and at the conclusion of that investigation, I admonished Mr. Hagemann for what he did. But isn’t it ironic that the same person who was guilty of racial insensitivity, as determined by an investigation conducted by my office and my counsel, is levying these charges.” (Petition para'll.)
Hagemann responded to Borough President Molinari’s statement in an October 2, 1994 letter to the Borough President, in which he denied that he had been found guilty of racial insensitivity and indicated that he would be releasing his response to the public.
Petitioner’s FOIL request for a copy of the guilty verdict and investigation of Hagemann was denied by the Borough Presidents’ Records Access Officer on the basis of the confidential nature of the requested material, citing 43 RCNY 1-05 (e) (4), (5). Petitioner appealed the denial of its request, and that appeal was denied by the Deputy Borough President on the following grounds: "[The requested material] is * * * exempt from disclosure pursuant to: (1) Public Officers Law Section 87 (2) (b) (parallel provision Rules of The City of New York, Title 43, 1-05 (e) (4, 5)), on the grounds that disclosure would constitute an unwarranted invasion of personal privacy; and (2) Public Officers Law Section 87 (2) (g) on the grounds that the records are interagency or intra-agency materials which are not *273 statistical or factual tabulations or data, instructions to staff that affect the public, final agency policy or determinations, or external audits.” (Petition, exhibit F.)
Subsequently, petitioner commenced this article 78 proceeding to challenge respondent’s denial of its request. Thereafter, respondent provided petitioner with a copy of a memorandum dated April 22, 1993 from Borough President Molinari to his counsel, respondent Daniel Master (Molinari Memorandum). According to respondent, that Molinari Memorandum represents the Borough President’s final determination regarding an incident of racial insensitivity which had occurred in October 1992. The copy of the memorandum provided to petitioner had the names of individuals redacted, although Raymond Hagemann’s name was not redacted. Further, respondents have informed petitioner and the court that they have not disclosed a March 10, 1993 memorandum written by Master to Borough President Molinari (Master Memorandum) regarding an investigation that Master had conducted at the request of the Borough President, regarding an alleged incident of racial harassment.
Respondent has taken the position that the Master Memorandum is intraagency, predecisional and nonfinal material, and is therefore exempt from disclosure pursuant to FOIL. They have also taken the position that the names set forth in the Molinari Memorandum need not be disclosed. Respondent has provided the court with a copy of the Master Memorandum, as well as a list of the names of the individuals whose names were redacted from the Molinari Memorandum for in camera inspection.
DISPOSITION
The Freedom of Information Law "imposes a broad standard of open disclosure upon agencies of the government” and "all records of an agency are presumptively available for public inspection and copying, unless they fall within one of eight categories of exemptions. (Public Officers Law, § 87, subd 2.)” (Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 79-80; see also, Matter of Weston v Sloan, 84 NY2d 462; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562.) Importantly, as was noted by the Court of Appeals in Farbman & Sons (supra), with application here: "To give the public maximum access to records of government, these statutory exemptions are narrowly interpreted, and the burden of demonstrating that requested material is exempt *274 from disclosure rests on the agency. (Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557.) FOIL does not require that the party requesting records make any showing of need, good faith or legitimate purpose; while its purpose may be to shed light on government decision-making, its ambit is not confined to records actually used in the decision-making process. (Matter of Westchester Rockland, Newspapers v Kimball, 50 NY2d 575, 581.) Full disclosure by public agencies is, under FOIL, a public right and in the public interest, irrespective of the status or need of the person making the request.” (62 NY2d 75, 80.)
Here, the only document that has been provided to petitioner in response to its FOIL request is the April 22, 1993 Molinari Memorandum, which is addressed to Daniel Master, Counsel, and states as follows:
"This afternoon at about 3:30 P.M. I called in Ray Hagemann and discussed at length the [redacted] incident and the investigation that you conducted. I explained to him that your investigation revealed that [redacted] was responsible for the preparation of the document in question and, therefore, he was primarily responsible for the incident that followed.
"I then requested that Mr. Hagemann visit with Ms. [redacted] and apologize for any emotional distress that the flyer may have caused her. He readily responded that he would do so, and that after he had discussed the matter with her and apologized, he would send a memorandum to me as confirmation he took such steps.”
This memorandum sheds very little light on the incident and the ensuing investigation. The names of individuals connected with the incident have been redacted, and there is no description of the incident, other than a mention that it concerned a flyer, and that Hagemann was asked to apologize.
As vague and unilluminating as is the Molinari Memorandum, the Master Memorandum that has been submitted to the court for in camera inspection is detailed and informative. The Master Memorandum lists the individuals that were interviewed, describes the incident and the flyer involved in the incident, details the steps taken in Master’s investigation and contains conclusions reached as a result of the investigation.
Respondents assert that the Master Memorandum is exempt from disclosure because it is an intraagency document which is predecisional and nonfinal (Public Officers Law § 87 [2] [g] [iii]). However, as was stated by the court in Safecard Servs. v Securities & Exch. Commn. (926 F2d 1197 [DC Cir *275 1991]), in determining whether a document is exempt from disclosure under the Freedom of Information Act, "the court needs to know whether the document explains, directly or by reference, the reason for the agency’s decision. Bristol-Myers [Co. v Federal Trade Commn., 598 F2d 18,] at 24-28.” (926 F2d 1197, 1204.)
The court’s in camera reading of the Master Memorandum, together with a reading of the Molinari Memorandum, leads to the conclusion that Borough President Molinari based his actions with respect to Hagemann on the information that he received from the Master Memorandum. The Molinari Memorandum states, inter alia, that the Borough President called in Hagemann and discussed the investigation that Master had conducted, and that the Borough President explained to Hagemann that Master’s investigation had revealed that a certain individual was responsible for preparing the document. Thus, the Borough President adopted the findings contained in the Master Memorandum and, by express reference, incorporated those findings into his memorandum.
In view of this adoption and incorporation, the court is not persuaded that the Master Memorandum is exempt from disclosure as a nonfinal intraagency document. Here, as in Safe-card Servs. (supra), if, in explaining its decision, the agency "expressly adopts or incorporates any element of * * * a staff member’s prior oral or written discussion of the matter, those incorporated portions of earlier minutes or documents would no longer qualify as pre-decisional.” (926 F2d 1197, 1205.) Further, the contents of the Master Memorandum are "investigative and depend on the observation and expertise of the [investigator] but [do not reflect] the deliberative processes of decision or policy-making.” (Moore-McCormack Lines v I.T.O. Corp., 508 F2d 945, 948 [4th Cir 1974].)
Further, it is important to note that although respondents have resisted disclosing the information sought by petitioner, the Borough President opened up this Pandora’s Box by stating, in 1994, on a public access television show, that two years earlier, Raymond Hagemann had been found guilty of racial insensitivity, as determined by an investigation conducted by his office and his counsel. Having made this public pronouncement, it ill-behooves the Borough President to claim that the document which explains the incident and the investigation is exempt from disclosure.
In addition, to the extent that the Master Memorandum was arguably exempt from the provisions of FOIL, "[voluntary *276 disclosure of a significant part of the privileged communications may waive the privilege” and "[alternatively, if a release creates even 'an unintended false impression’ of the underlying material, the privilege may be waived.” (Peck v United States, 514 F Supp 210, 212 [SD NY 1981] [citations omitted], rearg denied and granted in part 522 F Supp 245, appeal dismissed 680 F2d 9.) Interestingly, in Peck (supra), upon denying in part a subsequent motion for reargument, the court rejected defendant’s argument that defendant had never intended that the report be released to the public. The court observed that "[t]he test for waiver is essentially an objective one, and the intent of the party who made partial disclosure concerning the remainder of the privileged matter is not dis-positive.” (522 F Supp 245, 246.)
Based upon the foregoing, the court concludes that respondent has not met its burden of demonstrating that the Master Memorandum is exempt from disclosure under Public Officers Law § 87 (2) (g). Further, regarding respondents’ claim of exemption based upon confidentiality considerations, the court is not persuaded that respondents have demonstrated that disclosure of the names of individuals included in the Master Memorandum and the Molinari Memorandum would constitute an unwarranted invasion of personal privacy as defined by Public Officers Law § 89 (2).
Absent from the record before the court is any sworn statement, made by an individual with personal knowledge, that certain individuals were promised confidentiality. Instead, that representation is made by counsel in her memorandum of law. And, even if the court had been provided with some admissible, probative evidence that certain individuals had been promised confidentiality, that is not one of the examples of unwarranted invasion of personal privacy listed in the statute (Public Officers Law § 89 [2] [b]). While that section is illustrative, and does not limit the definition of unwarranted invasion of personal privacy to the situations described in that section, respondents have not demonstrated that disclosure of any of the names set forth in the memoranda would constitute an unwarranted invasion of personal privacy.
Accordingly, the petition is granted and respondents are directed to provide petitioner with unredacted copies of the Molinari and Master Memoranda. A copy of the documents received in camera will be sealed and held by the court. The originals may be retrieved by respondents in chambers.