This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 56
In the Matter of Jesse Friedman,
              Appellant,
       v.
Kathleen M. Rice, &c.,
              Respondent.



              Ronald L. Kuby, for appellant.
              Judith R. Sternberg, for respondent.
              Reporters Committee for Freedom of the Press, et al.;
National Association of Criminal Defense Lawyers et al.; District
Attorneys Association of the State of New York, amici curiae.




RIVERA, J.:

       On this appeal we clarify the proper interpretation of

section 87 (2) (e) (iii) of our State's Freedom of Information

Law (Public Officers Law art 6 [FOIL]), under which a government

agency may seek to exempt from public inspection those records,

or a portion thereof, "compiled for law enforcement purposes and

- 1 -

which, if disclosed, would . . . identify a confidential source or disclose confidential information relating to a criminal investigation" (Public Officers Law § 87 [2] [e] [iii]).  We hold that a government agency may rely on this exemption only if the agency establishes (1) that an express promise of confidentiality was made to the source, or (2) that the circumstances of the particular case are such that the confidentiality of the source or information can be reasonably inferred.

Here, the Second Department applied the wrong standard when it held that the District Attorney of Nassau County properly denied petitioner Jesse Friedman's FOIL request for records relating to his conviction.  The court relied on its precedent that identifying information and statements gathered in the course of a police investigation from witnesses who do not testify at trial are presumptively confidential and, as such, are exempt from disclosure under FOIL.  No other Appellate Division Department has adopted this interpretation of section 87 (2) (e) (iii).  Rather, the other Departments have properly required some express or implied assurance of confidentiality to justify withholding information, including the names or identities of sources.  The federal courts have required a similar showing under the federal Freedom of Information Act (FOIA).

We conclude that the Second Department misinterpreted section 87 (2) (e) (iii), and respondent's denial of petitioner's FOIL request must be analyzed under the proper standard as set

forth in this opinion.  Therefore, we now reverse the Appellate Division order and remit the matter to Supreme Court.

I.

This appeal is the latest in petitioner's efforts to overturn his decades-old child sex crime convictions.  In this litigation, petitioner seeks information in the control of the Nassau County District Attorney's Office, including the victim statements and other information gathered during police interviews of child witnesses.  Petitioner argues that this material is necessary to establish his claim of actual innocence.  Before turning to the legal issues, we briefly summarize the events that led to petitioner's conviction and the procedural history of the matter before us.

A.

In 1987, then 18-year-old petitioner and his father were arrested on multiple counts of sexual abuse of several children between the ages of 8 and 12.  According to the charges contained in the three indictments filed against petitioner, the abuse occurred over five years while the children attended an after-school computer class taught by petitioner's father at their family home.  There was no forensic evidence of physical abuse and the prosecution relied heavily on the children's allegations made after questioning by the police, who employed tactics and interview techniques that the District Attorney concedes were "not ideal" and are no longer in use.

Petitioner's father pleaded guilty to numerous sex crimes in 1988 and died in prison in 1995. A few months after his father's plea, petitioner also pleaded guilty to various sex crimes, and was sentenced to multiple concurrent terms with a maximum range of 6 to 18 years of incarceration. Petitioner did not appeal, and, after serving 13 years of his sentence, was paroled in December 2001.

B.

Approximately one year after petitioner was paroled, the film "Capturing the Friedmans" was released. The movie suggested that the police had elicited witness statements using investigatory techniques that were unreliable or known to produce false testimony -- including, in the case of one witness, hypnosis -- and that petitioner was wrongfully convicted and actually innocent. The filmmaker had interviewed many of those involved in the original investigation, including detectives, attorneys, family members, and victims.

Based on new information petitioner learned from the film, he commenced the first of several state and federal court proceedings. In 2004, petitioner moved unsuccessfully in state court to vacate his conviction. The Appellate Division denied him leave to appeal, and a Judge of this Court dismissed his application for leave to appeal (6 NY3d 894 [2006]). Petitioner subsequently petitioned for a writ of habeas corpus in federal court, claiming, among other things, that he would not have

pleaded guilty if he had known the details of the flawed investigatory procedures used to build the case against him. Petitioner asserted that he only learned about these methods from the filmmaker, who provided access to his materials including unredacted tapes and complete transcripts of witness interviews.

The federal district court dismissed the habeas petition as untimely, and the Second Circuit affirmed, also concluding that the proceeding was time-barred (see Friedman v Rehal, 618 F3d 142, 152 [2d Cir 2010]). The court's opinion, however, included an extensive discussion highlighting the judges' concerns with the process leading to petitioner's conviction. The court noted that "[t]he magnitude of the allegations against petitioner must be viewed in the context of the late 1980s and early-1990s, a period in which allegations of outrageously bizarre and often ritualistic child abuse spread like wildfire across the country" (618 F3d at 155). This "[v]ast moral panic fueled a series of highly-questionable child sex abuse prosecutions," based largely "on memories that alleged victims 'recovered' through suggestive memory recovery tactics" and investigatory techniques that, "[t]he prevailing view" now holds, "are [in the vast majority of cases] false" (id. at 155-156). The court observed that between 1984 and 1995 "seventy-two individuals were convicted in nearly a dozen major child sex abuse and satanic ritual prosecutions," but "almost all th[ose] convictions have since been reversed" (id. at 156). The instant

case was "merely one example" of that "significant national trend," as it featured many of the same allegations, investigatory techniques, and developmental patterns seen across the country (id. at 158). The court intended that its "lengthy discussion of the facts and circumstances that Friedman asserts led to his conviction" would "make the case that a further inquiry by a responsible prosecutor's office is justified despite a guilty plea entered under circumstances which clearly suggest that it was not voluntary" (id. at 161). The court ultimately concluded that "[t]he record here suggests a reasonable likelihood that Jesse Friedman was wrongfully convicted" (id. at 159-160 [internal quotation marks omitted]).[1]

### C.

After the Second Circuit issued its decision, then-Nassau County District Attorney Kathleen M. Rice announced she would reopen the case and convene a "Friedman Case Review Panel" to oversee the reinvestigation. Senior prosecutors in the Nassau County District Attorney's Office, who were not involved in the original case nor part of the prior administration that prosecuted petitioner, worked alongside an "Advisory Panel" of

---

[1] Judge Raggi concurred in the judgment and joined all but the part of the court's opinion that recounted petitioner's assertions of the circumstances that led to his conviction and the conclusion the court drew as to his innocence. However, she agreed that "the facts alleged are disturbing and may well warrant further inquiry by a responsible prosecutor's office" (618 F3d at 161 [Raggi, J., concurring in part]).

criminal justice and wrongful conviction experts.  The reinvestigation was conducted by the "Review Team" of prosecutors, which had access to the District Attorney's entire case file as well as the grand jury minutes.  The "Advisory Panel" advised the Review Team on "process issues," counseling the prosecutors on how best to conduct a reinvestigation and generally auditing whether the Review Team was operating in good faith.  The Advisory Panel did not itself conduct the reinvestigation or weigh the credibility of witnesses, and it had access only to those documents, some redacted, provided to it by the District Attorney's office.

In the Review Team's final report, it concluded that petitioner "was not wrongfully convicted" and that none of the Second Circuit's principal concerns were substantiated by the evidence.  It distinguished the case from the moral panic cases of the 1980s and 1990s on the grounds that the allegations in the Friedman prosecution were plausible, the children involved were older, and petitioner had pleaded guilty.  The Advisory Panel prefaced the report with its own statement that "the conclusions expressed in the Review Team's Report are reasonable and supported by the evidence it cites."

In 2012, before completion of the report but after the District Attorney announced the appointment of the Advisory Panel, petitioner filed a FOIL request for all documents provided by the Nassau County District Attorney to the "Friedman Case

Review Panel" and for all records concerning whether Advisory Panel members were "members of the general public for purposes of [FOIL] and Civil Rights Law § 50-b."  By letter, the Nassau County District Attorney's Office denied the request based on multiple grounds: (1) Public Officers Law § 87 (2) (e) (iii), which, the letter claimed, exempted all "statements of witnesses compiled for law enforcement purposes, unless the witnesses have testified at trial"; (2) Civil Rights Law § 50-b (1) (as applied to FOIL through Public Officers Law § 87 [2] [a]), which exempts from disclosure any document which "tends to identify" the victim of a sex crime; (3) Public Officers Law § 87 (2) (e) (i), which the District Attorney claimed exempted from disclosure information that would interfere with an ongoing criminal investigation;[2] and (4) Public Officers Law § 87 (2) (g), which exempted most inter- and intra-agency materials.[3]  The letter also informed petitioner that the District Attorney did not believe a compelling and particularized basis existed for disclosing the grand jury transcripts, but that petitioner could move for their release on those grounds in state court.

On his administrative appeal from the denial of his

---

[2] The "ongoing investigation" in this case was the District Attorney's reinvestigation.

[3] Notably, the District Attorney did not invoke Public Officers Law § 87 (2) (b), which exempts "records or portions thereof that . . . if disclosed would constitute an unwarranted invasion of personal privacy" within the meaning of Public Officers Law § 89 (2).

FOIL request, petitioner argued that courts had rejected the type of blanket exemptions claimed by the District Attorney.  The FOIL Appeal Officer nevertheless upheld the asserted exemptions as sufficiently particular.

D.

Petitioner subsequently commenced this proceeding pursuant to CPLR article 78 against respondent, Kathleen M. Rice, in her official capacity as the Nassau County District Attorney,[4] seeking disclosure of his entire case file and the grand jury minutes.[5]  The District Attorney responded that the court lacked jurisdiction and sought dismissal of the petition, asserting that petitioner had not yet exhausted his administrative remedies since he had only requested documents shared with the Advisory Panel rather than his entire case file.  As to what had been shared with the Advisory Panel, the District Attorney reasserted that the material was exempt from disclosure under FOIL and Civil Rights Law § 50-b (1).

---

[4] Rice stepped down as District Attorney in 2015 and was succeeded by Madeline Singas as acting District Attorney.  Singas was elected Nassau County District Attorney in 2016.

[5] Additionally, in June 2014, petitioner commenced a defamation action against the District Attorney and two Information Officers employed by her office, which Supreme Court dismissed in 2015. Also in June 2014, petitioner filed a motion, pursuant to Criminal Procedure Law § 440, to vacate his judgment of conviction and dismiss the underlying indictments.  Supreme Court denied the motion to overturn the conviction but granted, on consent, his request for a hearing on actual innocence.  That hearing has been stayed pending the resolution of this appeal.

By this time, the reinvestigation was complete and the Review Team had elected to disclose inter- and intra-agency communications, rendering moot two of the prior four FOIL grounds for withholding disclosure.  The District Attorney nevertheless maintained that the remaining documents were exempt, relying on Civil Rights Law § 50-b (1) and the confidentiality exemption contained in Public Officers Law § 87 (2) (e) (iii).[6]  As for the grand jury minutes, the District Attorney argued that petitioner had failed to demonstrate a particularized and compelling need for their release, as required under Criminal Procedure Law § 190.25 (4) (a).

Supreme Court granted the petition and directed the District Attorney to provide petitioner with all documents and records in his case file, as well as the grand jury minutes, with the names of three witnesses redacted.[7]  Pursuant to CPLR 5519

---

[6] The District Attorney further claimed that all four FOIL exemptions had been properly invoked at the time of petitioner's request.

[7] Those witnesses had contacted the court in response to petitioner's notice of his request for access to his case file, as required by Civil Rights Law § 50-b (2) (b).  That provision states that petitioners seeking the disclosure of documents tending to identify the victim of a sex offense should "appl[y] to a court having jurisdiction over the alleged offense, demonstrate[] to the satisfaction of the court that good cause exists for disclosure to that person[,]" and make "[s]uch application . . . upon notice to the victim or other person legally responsible for the care of the victim [as well as] the public officer or employee charged with the duty of prosecuting the offense[.]"  Petitioner did not complain about the redaction of the names of witnesses who, in response to the notice,

(a), Supreme Court's judgment was stayed pending respondent's appeal.

Thereafter, the Appellate Division reversed, denied the petition, and dismissed the proceeding, with one Justice dissenting (134 AD3d 826 [2d Dept 2015]). The court held that petitioner did not need to exhaust his administrative remedies, since it was clear from the District Attorney's response to the initial FOIL request that further administrative proceedings would have been futile. On the merits, the court concluded that the case file was appropriately withheld under section 87 (2) (e) (iii), which, according to Second Department precedent, exempted from FOIL disclosure the statements of nontestifying witnesses as presumptively confidential. The court further held that petitioner did not demonstrate a compelling and particularized need for the grand jury minutes.[8]

As discussed in her thoroughly-written opinion, the dissenting Justice would have modified the judgment to direct the specific disclosure of the redacted materials provided to the Advisory Panel, as well as the case file, investigatory notes, and grand jury minutes, subject to the redaction of the names of the witnesses who had objected to the disclosure of their

---

objected to the disclosure of their identities, but he reserved the right to do so. Supreme Court thus clarified that its redaction order was given on consent of the parties.

[8] The parties agree that no court reviewed the grand jury minutes.

identities (134 AD3d at 831-832 [Barros, J, dissenting]).
According to the dissent, the District Attorney failed to support
the withholding of the documents under section 87 (2) (e) (iii).
The dissent identified a split between the Second Department's
interpretation, which applies this exemption to all witness
statements obtained in the course of preparing for trial unless
used in open court, and decisions of the First, Third, and Fourth
Departments, as well as the federal courts, which only recognize
the exemption where the government can show an express promise of
confidentiality or circumstances from which confidentiality can
be inferred (see id. at 832-836).  We granted petitioner leave to
appeal (27 NY3d 903 [2016]).

II.

Petitioner argues that the Second Department's
interpretation of FOIL impermissibly creates a blanket exemption
for all nontestifying witnesses and thus misinterprets the
statute and undermines its purpose.  He claims that the Second
Department deviates from the interpretation of this provision
adopted by every other Department and the federal courts.
Petitioner also asserts that he established a compelling and
particularized need for the grand jury minutes and that he should
be permitted access to the witness statements in his case file in
accordance with Civil Rights Law § 50-b (2) (b).

We conclude that the Second Department applied an
incorrect standard in determining the applicability of FOIL's

confidentiality exemption to petitioner's request.  Under section 87 (2) (e) (iii), sources and information may be withheld only upon a specific showing of an express promise of confidentiality to the source, or a finding that, under the circumstances of the particular case, the confidentiality of the source or information can be reasonably inferred.

## A.  Exhaustion

As a threshold matter, we reject respondent's argument that petitioner's claim for his entire case file is unreviewable because he did not include that specific demand in his FOIL request.  Petitioner's FOIL request sought "the documents provided by the Nassau County District Attorney to the entity known as the 'Friedman Case Review Panel.'"  That language tracks the District Attorney's earlier press release that four experts had been appointed to a "Friedman Case Review Panel" who would "join prosecutors in review of" petitioner's case, to "work alongside" her office and "oversee the investigation."  Here, taken in context and under the circumstances, petitioner's request reasonably described, and therefore clearly sought, all documents that would be part of the reinvestigation process called for by the District Attorney (see Public Officers Law § 89 [3]).

Even if that were not the case, under the particular circumstances presented here, petitioner does not have to restart the FOIL process anew.  The general rule requiring a party to

exhaust administrative remedies before seeking judicial review of an agency's determination "need not be followed . . . when resort to an administrative remedy would be futile" (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]).  As every judge who has considered the matter properly concluded, the District Attorney's letter denying petitioner's FOIL request clearly established that respondent's office would not release any documents to petitioner from the Friedman case file absent a court order, rendering futile any further attempts at administrative review.  The letter informed petitioner that the information he requested was only being shared with the Advisory Panel because its members had sworn an oath of confidentiality and were operating "as an extension of [the prosecutor's] office."  As a general matter, the letter went on, the documents he sought were "not available to the general public," were "confidential under Civil Rights Law § 50-b," and so were "not available to you or others who seek them under FOIL."  As a member of the general public -- which is, as we have long maintained, the status of anyone seeking documents under FOIL (see Matter of John P. v Whalen, 54 NY2d 89, 99 ["(O)ne who seeks access to records under the Freedom of Information Law (does so) as a member of the public(.)"]) -- petitioner was never going to receive access to any of the documents he wanted from the District Attorney's office.  In other words, since the District Attorney did not grant the Advisory Panel access to the entire

unredacted case file, it follows that she similarly would have
denied access to petitioner.  Indeed, the District Attorney's
unwavering position throughout this litigation has been that all
information sought by petitioner should be subject to a blanket
exemption from disclosure.  Thus, even assuming any ambiguity in
petitioner's FOIL request, an additional request for information
provided specifically to the Review Team that was not disclosed
to the Advisory Panel would have been futile.[9]

   "The exhaustion rule . . . is not an inflexible one,"
and should be applied where it "furthers the salutory goals of
relieving the courts of the burden of deciding questions
entrusted to an agency, preventing premature judicial
interference [with the work of the agency], and affording the
agency the opportunity, in advance of possible judicial review,

---

[9] The dissent and respondent imply that the original case
file may contain material that was not shared with the Advisory
Panel and does not fit within a FOIL exemption invoked by the
District Attorney in her original denial (dissenting op at 3-4).
However, by the District Attorney's own admission, the Advisory
Panel only had access to certain materials in the case file
because of its special status.  It stands to reason that any
documents that would have been reachable under FOIL -- that is,
that the public, with its less privileged status, might have been
able to request -- would also have been available to the Advisory
Panel.

   Moreover, at no point in this litigation has respondent ever
indicated what additional case file material might be protected,
what additional FOIL grounds respondent would have invoked to
prevent their release, or even *that* respondent would have invoked
other FOIL exemptions at all.  In fact, contrary to the dissent's
assertion, all the material disclosed as part of the Conviction
Integrity Review had initially been withheld under a FOIL
exemption invoked in the District Attorney's first denial letter.

to prepare a record reflective of its 'expertise and judgment'" (Watergate II Apts., 46 NY2d at 57 [internal citations omitted]). Those goals would not be served by mechanical application of the rule to petitioner's case.  Under the facts presented here, it would be an exercise in futility and a waste of administrative and judicial resources to require petitioner to request documents merely for respondent to restate the same bases for denial.

     B.   FOIL Exemption Section 87 (2) (e) (iii)

The purpose of FOIL is "[t]o promote open government and public accountability" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274 [1996]).  The law's "premise [is] that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]).  One of FOIL's salient features is its capacity to expose "abuses on the part of government; in short, 'to hold the governors accountable to the governed'" (id., quoting NLRB v Robbins Tire & Rubber Co., 437 US 214, 242 [1978]).  In furtherance of the legislature's policy of disclosure, "FOIL provides the public with broad 'access to the records of government' [and] [a]n agency must 'make available for public inspection and copying all records' unless it can claim a specific exemption to disclosure" (Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007], quoting Public Officers Law §§ 84, 87 [2], 89 [3]).  These "exemptions are to be narrowly interpreted so that the public is granted

maximum access to the records of government" (id. at 462). "Thus the agency does not have carte blanche to withhold any information it pleases. Rather it is required to articulate particularized and specific justification . . . to exempt its records from disclosure. Only where the material requested falls squarely within the ambit of one of these statutory exemptions may disclosure be withheld" (Matter of Fink, 47 NY2d at 571 [internal citation omitted]).

As relevant to this appeal, an agency may withhold documents "compiled for law enforcement purposes and which, if disclosed, would . . . identify a confidential source or disclose confidential information relating to a criminal investigation" (Public Officers Law § 87 [2] [e] [iii]). The Second Department categorically held below that "witness statements and other documents containing information provided to law enforcement officials during [a] criminal investigation by witnesses who did not testify at trial [are] exempt from disclosure under [section] 87 (2) (e) (iii)" (134 AD3d at 828). In so holding, the Second Department purported to follow its prior departmental case law that "the statements of nontestifying witnesses are confidential, and that [this] 'cloak of confidentiality' is removed 'once the statements have been used in open court'" (id., quoting Matter of Moore v Santucci, 151 AD2d 677, 679 [2d Dept 1989]).

This precedent refers back to Second Department decisions that were decided under a former and no longer valid

FOIL provision.  Matter of Knight v Gold (53 AD2d 694 [2d Dept 1976]), the foundation for Matter of Moore v Santucci (151 AD2d 677 [2d Dept 1989]), relied on below, was based on a prior version of FOIL which broadly exempted all information that was "part of investigatory files compiled for law enforcement purposes" (former Public Officers Law § 88 [7] [d] [L 1974, ch 579 § 3]).  Of particular note, this prior version of FOIL made no reference to confidential sources or confidential information. That is to say, under the plain language of that statute, "investigatory files compiled for law enforcement purposes," including witness statements, could be withheld from disclosure irrespective of the confidential nature of the information or its source.  That section of the statute was amended in 1977, and replaced with the enumerated categories set forth today in Public Officers Law §§ 87 (2) (e) (i)-(iv), including the exemption at issue here.  The legislature thus discarded the broad protections from disclosure found in the previous version of FOIL and adopted discrete, limited exemptions, reaffirming the law's general policy of public access to government documents (cf. Matter of Lesher v Hynes, 19 NY3d 57, 64-65 [2012] [describing Congress' 1974 amendments to FOIA, which replaced a generic exemption from disclosure for information compiled for law enforcement purposes with six specific exemptions, and noting that the New York legislature's 1977 amendments to FOIA "followed suit"]).

The amendments were widely understood at the time to

"reverse[] the presumption" of the old law, according to which "records [were] deniable unless they f[ell] within one of nine limited categories of records" that could be disclosed.  Instead, the amendments "state[d] that all records . . .  are accessible unless specifically listed as deniable" (Mario M. Cuomo, Secretary of State, News Release, July 27, 1977, at 5, Bill Jacket, L 1977, ch 933 [internal quotation marks omitted]). Members of law enforcement objected to the bill for this very reason, observing that it replaced a presumption of nondisclosure and broad protections for all materials gathered in the course of law enforcement investigations with a presumption of disclosure and a narrow set of exemptions for only certain kinds of law enforcement materials, which could be invoked at only certain times (see e.g. William G. Connelie, Superintendent, New York State Police, Mem re: Senate 16-A, July 29, 1977, at 5-6, Bill Jacket, L 1977, ch 933).  The Second Department's jurisprudence thus lacks historical and textual foundation.[10]

Nevertheless, respondent advocates for a blanket rule that categorically permits the withholding of statements of

_____

[10] The court's interpretation here is also inconsistent with the Second Department's reading of Public Officers Law § 89 (2) (b) (v), another FOIL confidentiality exemption, which generally protects the "disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such an agency."  There, that court construed confidentiality to attach only to information gathered from "individuals [who] received an express or implied promise of confidentiality" (Matter of Prall v New York City Dept. of Corrections, 129 AD3d 734, 736 [2d Dept 2015]).

nontestifying witnesses without regard to the specific facts and circumstances of the subject case.[11]  In so doing, respondent misconstrues section 87 (2) (e) (iii) and FOIL's purpose by applying the exemption expansively rather than narrowly. Respondent's proposed rule thus constricts the broad access to which the public is entitled under the law.  As our Court has stated, FOIL "established a general policy [in favor of] disclosure" (Matter of Fink, 47 NY2d at 571) and so "exemptions [to FOIL] are to be narrowly interpreted so that the public is granted maximum access to the records of government" (Data Tree, 9 NY3d at 462, citing Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246, 252 [1987]).  The rule advocated by respondent would essentially reinstate the previously discarded non-disclosure presumption, clearly in contravention of the statute's purpose and settled case law.

In addition, such an interpretation of section 87 (2) (e) (iii) cannot be reconciled with the statutory language, as it effectively excises the word "confidential" from the statutory exemption.  This we cannot do, because "[i]n the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as

---

[11] To the extent respondent's argument may be interpreted as limited solely to witness statements, we note that section 87 (2) (e) (iii) also applies to "confidential information" without regard to source.  In accordance with the statute's plain text, the rule we elaborate here applies to sources and information alike.

superfluous when it is practicable to give each a distinct and separate meaning" (McKinney's Cons Laws of NY Book 1, Statutes § 231; see also McKinney's Cons Laws of NY Book 1, Statutes § 98 ["(E)ffect and meaning must, if possible, be given to the entire statute and every part and word thereof."]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 587 [1998]). If the legislature intended for the exemption to apply to the statements of all witnesses, or even just those who do not testify at trial, it would simply have stated as much.  It did not, and instead used the word "confidential" to delineate the type of statements and sources not subject to FOIL disclosure. Given that "the Legislature established a general policy of disclosure by enacting the Freedom of Information Law" (Matter of Fink, 47 NY2d at 571), we cannot undermine that policy by exempting a large category of information from FOIL in a manner inconsistent with the plain language of the statute.

Were we to construe the law otherwise, we would be creating an unjustified and impermissible precondition on disclosure.  Under respondent's proposed rule, the only witness statements accessible under FOIL are statements that have already been made public in open court.  In practice, this restricts access to witness statements under FOIL to statements that have already been disclosed at a trial.  Nowhere does section 87 (2) (e) (iii), however, so much as mention the need for prior public disclosure, whether at a trial or any other judicial proceeding,

as a disclosure precondition.  The legislature did not limit disclosure under FOIL to information released through post-hoc publication, and we decline to impose such a limitation ourselves.

Respondent alleges that its proposed categorical exemption is essential to encourage the cooperation of individuals who might otherwise refrain from disclosing confidential information if they knew that they could be identified as the source.  This circular reasoning is unpersuasive since the law by its terms protects confidential sources (see Public Officers Law § 87 [2] [e] [iii] [exempting "confidential source(s)" from disclosure under FOIL]).

Moreover, a blanket exemption for any statement made to law enforcement on the ground that it is inherently confidential admits of absurd results.  There is no basis to assume that every person who communicates with law enforcement in the course of a criminal investigation expects that their name and each and every statement they make will be held in confidence.  So interpreted, the exemption would cover even an innocuous statement to a police officer or a comment that "relates," but is obviously insignificant, to a criminal investigation.  Consider, for example, a nontestifying witness who avers merely that "I did not see anything," or a witness who merely corroborates undisputed and uncontroversial facts.  Respondent concedes that statements of such nature are not "confidential" under any accepted

understanding of the term, yet, the rule for which respondent advocates would seem to place those statements under a "cloak of confidentiality."

Unsurprisingly, respondent's interpretation of section 87 (2) (e) (iii) is an outlier. Every other Appellate Division Department, in reliance on the current version of FOIL, has concluded that "defendants are not entitled to a blanket exemption from disclosure" (Brown v Town of Amherst, 195 AD2d 979, 979 [4th Dept 1993]). The majority rule for New York Courts has been that "[s]tatements by a witness must be disclosed absent a showing that [the witness] was a confidential informant or was promised anonymity" (Matter of Gomez v Fisher, 74 AD3d 1399, 1401 [3d Dept 2010] [internal citations omitted]; see also Matter of Exoneration Initiative v New York City Police Dept., 114 AD3d 436, 440 [1st Dept 2014]). Indeed, in Matter of Exoneration Initiative, the First Department stated explicitly that information about an unnamed informant does not fall within section 87 (2) (e) (iii) "in the absence of any evidence that th[e] person received an express or implied promise of confidentiality" (114 AD3d at 440; see also Matter of John H. v Goord, 27 AD3d 798, 800 [3rd Dept 2006] [overruling a claimed FOIL confidentiality exemption where an in camera review persuaded the court that "the records at issue . . . (did not) contain any suggestion that the participating witnesses qualif(ied) as confidential sources, and . . . d(id) not reveal

any source or disclose any information which would be deemed

confidential," while withholding disclosure under a separate FOIL

exemption "inasmuch as disclosure could endanger the life or

safety of a person"] [internal quotation marks and citations

omitted]).[12]

A blanket exemption for witness identifications and

statements would also be contrary to the interpretation of 5 USC

§ 552 (b) (7) (D), the FOIA counterpart to section 87 (2) (e)

(iii).[13]  As we have observed, "[f]ederal case law and

---

[12] Hakwins v Kurlander (98 AD2d 14 [4th Dept 1983]), relied
on by the Second Department for the proposition that "[t]he rule
holding that . . . statements [of nontestifying witnesses] are
inherently confidential is sound as it encourages private
citizens to furnish controversial information to law enforcement
officials" (Matter of Friedman, 134 AD3d at 829 [internal
quotation marks omitted]), is not to the contrary.  In that case
the witnesses had been given explicit assurances of
confidentiality (see Hawkins, 98 Ad2d at 17 ["For a court to hold
that a promise of confidentiality can be breached merely because
the investigation did not lead to criminal charges would raise a
red flag for future witnesses who might well decline to reveal
confidences to the District Attorney because of the risk of
public disclosure."]).  The federal case cited in Hawkins, and on
which the Second Department majority also relied, supports the
rule we adopt here (see Pope v United States, 599 F2d 1383, 1387
[5th Cir 1979] [upholding a decision to withhold witness
statements from disclosure under FOIA's confidentiality exemption
not because the witnesses did not testify but because "(t)he
substance of the three documents and the circumstances under
which the information was given (to the agency) convince us that
there was an implied assurance of confidentiality associated with
these communications"]).

[13] The federal statute exempts from disclosure information
from confidential sources, while the New York law protects
confidential sources and information (compare 5 USC § 552 [b] [7]
[D] [exempting from disclosure "records or information compiled

legislative history . . . are instructive" when interpreting a FOIL provision "patterned after the Federal analogue" (Matter of Lesher v Hynes, 19 NY3d at 64, quoting Matter of Fink, 47 NY2d at 572 n).

The United States Supreme Court has explained that the FOIA confidentiality exemption (5 USC § 552 [b] [7] [D]) applies only where there is "an express assurance of confidentiality or

_____

for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source"] and U.S. Dept of Justice v Landano, 508 US 165, 172 [1993] ["Under Exemption 7(D), the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."] with Public Officers Law § 87 [2] [e] [iii] [exempting from disclosure "records . . . compiled for law enforcement purposes and which, if disclosed, would . . . identify a confidential source or disclose confidential information relating to a criminal investigation"]). The difference in language between the FOIA and FOIL provisions does not diminish the usefulness of comparison with the federal analogue. Even though the federal statute does not by its terms apply to "confidential information," federal courts have sometimes interpreted the statute to cover the same kind of "confidential information" protected in New York on a similar theory (see e.g. Pope, 599 F2d at 1386-87 [withholding witness statements alleging attorney misconduct as confidential because "disclosure of the ( documents') contents would inevitably reveal their source" and "from the content and other circumstances" surrounding the documents, the court concluded the information was provided on an inferred assurance of confidentiality"] [internal quotation marks omitted]).

in circumstances from which such an assurance could be reasonably inferred" (U.S. Dept. of Justice v Landano, 508 US 165, 172 [1993] [internal quotation marks omitted]; see also Church of Scientology Intern. v U.S. Dept. of Justice, 30 F3d 224, 238 [1st Cir 1994] [applying Landano and rejecting several alleged FOIA confidentiality exemptions on the grounds that the government failed to establish that the documents withheld came from a source that had received an express promise of confidentiality, or that the circumstances warranted implying confidentiality]; Davin v U.S. Dept. of Justice, 60 F3d 1043 [3rd Cir 1995] [same]; Halpern v FBI, 181 F3d 279, 298-300 [2d Cir 1999] [applying Landano and finding no express promise of confidentiality, but finding that the circumstances supported some implicit confidentiality with respect to some of the requested information]).  The Supreme Court has also precisely rejected respondent's argument here -- that all law enforcement sources are inherently confidential.  Instead, the Court has held that whether a source is confidential should be determined under a "particularized approach", which may include consideration of "the character of the crime" and "the source's relation to the crime" (508 US at 180,179).  This reasoning applies with equal force to FOIL.  Ultimately, a determination of confidentiality should turn on an evaluation of the facts and circumstances surrounding the particular source or requested information.

III.

The legislature's policy of broad public access, as expressed in FOIL, dictates that the exemption for confidential sources and information be narrowly circumscribed.  Therefore disclosure under FOIL can only be refused pursuant to section 87 (2) (e) (iii) if the agency presents a "particularized and specific justification for denying access" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]), based on an express promise of confidentiality to the source, or by establishing that, under the circumstances of the particular case, the confidentiality of the source or information can be reasonably inferred.

Application of this rule is case and information specific, and depends on the particular facts and circumstances. In determining whether information obtained in the course of a criminal investigation should be treated as confidential or whether a source spoke on the assumption that the source's identity or statements would remain confidential, courts may consider, as they deem relevant, such factors as the nature of the crime, the source of the information in relation to the crime, and the content of the statements or information.  Where the content of a statement or information and the circumstances surrounding its compilation by law enforcement convince a court that its confidentiality can be reasonably inferred, it may be withheld or released with appropriate redactions pursuant to

section 87 (2) (e) (iii).  Otherwise, absent an explicit
assurance of confidentiality, it may not be withheld or redacted
under that FOIL exemption.[14]

Here, because the Second Department majority
misconstrued the FOIL exemption asserted by respondent, the order
below must be reversed and the matter remitted for consideration
under the correct standard.  The People remain free, on remittal,
to present evidence that the documents previously withheld are
exempt under section 87 (2) (e) (iii) in accordance with the
standard articulated in this opinion.  Since the Appellate
Division did not reach petitioner's Civil Rights Law argument and
Supreme Court did not review the grand jury minutes in

---

[14] Of course other statutory exemptions may apply.  The
legislature has enacted specific provisions to protect witnesses
and the accused from "unwarranted invasion[s] of [their] personal
privacy" (Public Officers Law § 87 [2] [b]) and, in some
circumstances, the disclosure of their identity (see e.g. Civil
Rights Law § 50-b).  The FOIL provision at issue here, though,
was not primarily designed to protect victims, witnesses, or
accused persons.  As its text and legislative history make clear,
this exemption is designed to balance the public's right to
information with the need to maintain the integrity of police
investigations involving confidential information and sources.
    Contrary to the dissent's contention, our rule does not lead
to the conclusion that "witness statements made in connection
with [child sex offense prosecutions will be] routinely
discoverable under FOIL" (dissenting op at 7).  As we have
explained, each FOIL request must be analyzed on its own terms,
based on the specific facts and circumstances it presents.  For
the same reason, a court analyzing whether an agency's invocation
of section 87 (2) (e) (iii) is justified should not place
"additional weight on the nature of the crime" as a categorical
rule (dissenting op at 6), but must consider the specific facts
and circumstances of each particular case.

determining whether petitioner met his burden to justify access to the minutes, we decline to reach those questions. Instead, we consider it prudent under the unique circumstances of this case to remit them, along with the FOIL matter, to Supreme Court for its consideration of all these claims.

IV.

We recognize that petitioner seeks these documents to support his claim of actual innocence and that our decision does not answer whether respondent may deny disclosure. We are also acutely aware that petitioner filed his FOIL request years ago and it remains unresolved, despite the legislature's intention to provide public access to government documents within a reasonable time frame. It is our intention that enunciation of the proper standard and our remittal to Supreme Court should facilitate the timely adjudication of petitioner's claims.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

Matter of Friedman v Rice

No. 56

WHALEN, J.(dissenting in part):

I agree with the majority opinion insofar as it holds that the Appellate Division read the confidentiality exemption of FOIL (Public Officers Law § 87 [2] [e] [iii]) too broadly; that witness statements should be protected from disclosure pursuant to that exemption only where a witness was promised confidentiality or the circumstances were such that the confidentiality of the information provided could reasonably be inferred; and that this proceeding should be remitted for Supreme Court to determine the applicability of the confidentiality exemption to the material sought in petitioner's initial FOIL request under the proper standard. I further agree with the majority that upon remittal, the Civil Rights Law § 50-b issues raised by the parties may be considered, and petitioner's request for disclosure of the grand jury minutes should likewise be determined following an in camera review of the minutes. I respectfully dissent, however, from the majority's conclusion that petitioner was not required to exhaust his administrative remedies with respect to his request for his "entire case file," i.e., documents outside the scope of his initial FOIL request. I also write separately because I do not fully agree with the

- 1 -

majority's discussion of how an agency can meet its burden of
establishing that information was intended to be confidential for
purposes of the FOIL confidentiality exemption in a case like
this one that involves allegations of sexual offenses committed
against children.

I.

Beginning with the exhaustion issue, I cannot agree
with the majority that this record reflects that it would have
been futile for petitioner to seek his entire case file from the
District Attorney through the FOIL process (see Town of Oyster
Bay v Kirkland, 19 NY3d 1035, 1038-1039 [2012], cert denied 568
US 1213 [2013]; cf. Watergate II Apts. v Buffalo Sewer Auth., 46
NY2d 52, 57 [1978]).[1]  It is not a fair interpretation of the
District Attorney's FOIL denial letter to say that it "clearly
established that [the District Attorney] would not release any
documents absent a court order" (majority op at 14).  Petitioner
asserts that his failure to request the "entire case file"
originally resulted from a lack of information regarding the
distinction between the Review Team and the Advisory Panel, and
that is the only explanation given for the request's expansion
from the original FOIL request to the article 78 petition.  Even
accepting, for the sake of argument, the premise that petitioner

_____

    [1] Because the District Attorney preserved her exhaustion
argument below, it is properly before us as an alternative ground
for an affirmance of the Appellate Division's order in part (see
generally Parochial Bus Sys. v Board of Educ. of City of N.Y., 60
NY2d 539, 545-546 [1983]).

may have been unaware (through no fault of his own) of the
difference between the Review Team and the Advisory Panel (cf.
Walton v New York State Dept. of Correctional Servs., 8 NY3d 186,
196 [2007] ["hindsight cannot be used to determine whether
administrative steps were futile"]), it is evident that the
District Attorney did not view petitioner's FOIL request as one
for "all documents that would be part of the reinvestigation
process" (majority op at 13) or "the entire case file" as stated
in petitioner's article 78 petition, and did not respond as
though all such documents had been requested.[2]  Indeed, as the
District Attorney points out in her brief, some items that are
presumably in the case file[3] are plainly not within the FOIL
exemptions she invoked in the denial letter, and have since been
made public with the final Conviction Integrity Review report.[4]

---

[2] The majority presumes that the Advisory Panel had access
to documents from the case file otherwise reachable under FOIL
(majority op at 15 n 9).  But it does not follow from the fact
that "the Advisory Panel only had access to certain materials in
the case file because of its special status" that it necessarily
received and considered every remaining piece of disclosable
material in the entire case file.  In any event, we need not
speculate, as the sole issue is what material the Advisory Panel
actually received, and whether that material is disclosable under
FOIL.  Any remaining items not disclosed to that panel are not
the proper subject of this proceeding.

[3] The entire case file is not part of the record before us,
and there is no basis to question the District Attorney's
assertion that it was not before Supreme Court either.

[4] The majority's claim that the District Attorney *withheld*
those items under FOIL (majority op at 15 n 9) presupposes that
she viewed them as within the scope of petitioner's request.

It is likely that there may be documents in petitioner's case file that are subject to as-yet-uninvoked FOIL exemptions, and the District Attorney has not yet been afforded the requisite opportunity to make a record with respect to any such documents (see Matter of Carty v New York City Police Dept., 41 AD3d 150, 150 [1st Dept 2007]; see generally Matter of Yarbrough v Franco, 95 NY2d 342, 347 [2000]; Watergate II Apts., 46 NY2d at 57). The majority faults the District Attorney because she has never "indicated what additional case file material might be protected, what additional FOIL grounds respondents would have invoked to prevent their release, or even that respondents would have invoked other FOIL exemptions at all" (majority op at 15 n 9). This is precisely because the request for the "entire case file" was unexhausted, and as a result the District Attorney was never given the opportunity to do so. Accordingly, I would affirm the Appellate Division order to the extent that it denied so much of the petition as sought disclosure under FOIL of documents other than those provided by the District Attorney to the Advisory Panel (see 134 AD3d at 831; see generally Matter of Fappiano v New York City Police Dept., 95 NY2d 738, 749 [2001]).


                              II.

        Turning to the confidentiality exemption, I agree with the majority that the Appellate Division's analysis -- which held the exemption applicable to any statement made by a witness who

did not testify at a trial (see 134 AD3d at 828-829) -- had its roots in a materially different version of FOIL (see Matter of Moore v Santucci, 151 AD2d 677, 679 [2d Dept 1989], citing Matter of Knight v Gold, 53 AD2d 694, 694 [2d Dept 1976], lv dismissed 43 NY2d 841 [1978]; see generally Matter of Lesher v Hynes, 19 NY3d 57, 64-66 [2012]), and is irreconcilable with the principle that FOIL exemptions must be narrowly construed (see Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462-463 [2007]; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]).  I also agree that the exemption should apply to witness statements only where a witness is promised confidentiality or the confidentiality of the information provided by the witness can be reasonably inferred, consistent with federal case law[5] and with Appellate Division cases from outside the Second Department (see e.g. U.S. Dept. of Justice v Landano, 508 US 165, 172 [1993]; Matter of Exoneration Initiative v New York City Police Dept., 114 AD3d 436, 440 [1st Dept 2014]; Matter of Carnevale v City of Albany, 68 AD3d 1290, 1292 [3d Dept 2009]).

While I generally agree with the majority's identification of factors to consider in evaluating whether confidentiality should be inferred (majority op at 27-28), I would place additional weight on the nature of the crime in

---

[5] Federal cases interpreting the Freedom of Information Act are instructive when interpreting section 87 (2) (e) of FOIL, which was patterned after its federal counterpart (see Matter of Madeiros v New York State Educ. Dept., — NY3d —, 2017 NY Slip Op 07209 at *6 [Oct. 17, 2017]; Lesher, 19 NY3d at 64).

proceedings involving sensitive matters such as alleged sexual offenses committed against children. The United States Supreme Court noted in Landano that the character of the crime being investigated may constitute a "generic circumstance[]" from which "an implied assurance of confidentiality [to witnesses] fairly can be inferred" (508 US at 179). As a matter of common sense, a witness who provides a statement alleging that he or she saw a sexual offense committed against a child does so with the reasonable expectation that the statement will be kept confidential "except to the extent . . . necessary for law enforcement purposes" (Landano, 508 US at 174). The inference of confidentiality is even stronger when the statement is given by a child, and stronger still when the child witness is also the victim of the alleged sexual offense. Where an agency establishes that material requested under FOIL consists of statements made by children concerning the investigation of a claim of sexual abuse, the confidentiality exemption should apply in the absence of circumstances that demonstrate that confidentiality was not intended. Notably, child sex offense prosecutions often end in plea bargains for the very purpose of protecting victims from having to testify publicly. That purpose would be subverted if witness statements made in connection with those prosecutions were routinely discoverable under FOIL and thus available not only to former defendants like petitioner seeking to establish their actual innocence but equally to any

member of the public regardless of the purpose for which the statements are sought (see Matter of Gould v New York City Police Dept., 89 NY2d 267, 274 [1996]; Matter of John P. v Whalen, 54 NY2d 89, 99 [1981]; Matter of Bellamy v New York City Police Dept., 59 AD3d 353, 355 [1st Dept 2009]).  Nonetheless, because there has not yet been an analysis of the confidentiality of the witness statements here under the proper standard, I agree with the majority that a remittal for that purpose is in order.  I would therefore modify the Appellate Division order by reinstating so much of the petition as sought disclosure of the materials provided to the Advisory Panel and the grand jury minutes, and I would remit the matter to Supreme Court for further proceedings in accordance with this opinion.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *


Order reversed, with costs, and matter remitted to Supreme Court, Nassau County, for further proceedings in accordance with the opinion herein.  Opinion by Judge Rivera.  Judges Stein, Fahey, Feinman and Peters concur.  Judge Whalen dissents in part in an opinion, in which Judge Garcia concurs.  Chief Judge DiFiore and Judge Wilson took no part.


Decided November 21, 2017