Matter of New York Times Co. v District Attorney of Kings County (2019 NY Slip Op 08410)





Matter of New York Times Co. v District Attorney of Kings County


2019 NY Slip Op 08410


Decided on November 20, 2019


Appellate Division, Second Department


Connolly, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 20, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JOSEPH J. MALTESE
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2018-08763
 (Index No. 3321/17)

[*1]In the Matter of New York Times Company, appellant,
v
District Attorney of Kings County, respondent.



APPEAL by the petitioner, in a proceeding pursuant to CPLR article 78 to compel the production of certain documents pursuant to the Freedom of Information Law (Public Officers Law art 6), from a judgment of the Supreme Court (Dawn Jimenez-Salta, J.), entered May 24, 2018, in Kings County. The judgment, insofar as appealed from, denied those branches of the petition which were to review redactions to a final report of the Kings County District Attorney's Conviction Review Unit relating to the exoneration of Jabbar Washington made on the grounds that the material constituted deliberative inter- or intra-agency materials, privileged attorney work product, or material related to grand jury proceedings, and to compel the production of final reports of the Kings County District Attorney's Conviction Review Unit relating to the exonerations of certain individuals other than Jabbar Washington and, in effect, dismissed those portions of the proceeding.



David E. McCraw, New York, NY (Al-Amyn Sumar of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Morgan J. Dennehy of counsel), respondent pro se.



CONNOLLY, J.


OPINION & ORDER
We hold that the final reports of the Kings County District Attorney's Conviction Review Unit (hereinafter CRU), which have led to numerous exonerations, are exempt from disclosure under the Freedom of Information Law (Public Officers Law art 6 [hereinafter FOIL]), unless the individual who was the subject of the report consents to its release pursuant to CPL 160.50(1)(d). Further, with respect to one such report where the exonerated individual consented to the report's release, we hold that challenges to certain redactions cannot be resolved without an in camera review of the redacted material.
I. Factual and Procedural History
The CRU, a bureau of the Kings County District Attorney's Office (hereinafter the DA), reviews the propriety of old convictions to determine whether defendants have been wrongfully convicted. According to the DA's website, "[a]s of February 2019, Brooklyn's CRU had exonerated 24 people, and the Unit has many more cases under review" (Post-Conviction Justice Bureau, http://www.brooklynda.org/post-conviction-justice-bureau [last accessed Aug. 15, 2019]).
As pertinent to this appeal, on July 12, 2017, as the result of an investigation by the CRU, the DA moved to vacate the 1997 murder conviction of Jabbar Washington. Washington's conviction stemmed from a January 21, 1995, robbery inside an apartment in Brownsville, during which five people were wounded and one person was killed. Seven defendants were charged and convicted in the case, including Washington, who was convicted of second degree felony murder and sentenced to 25 years to life in prison. In a July 12, 2017, press release announcing the decision to move to vacate the conviction, the DA stated that a CRU investigation had discovered that a crucial [*2]exculpatory document had not been turned over to Washington's defense counsel, in violation of Brady v Maryland (373 US 83). Specifically, the prosecution failed to disclose a grand jury synopsis sheet memorializing that an eyewitness, who had identified the defendant in a lineup, recanted her identification two days after the lineup took place. The lineup was conducted by now-retired Detectives Louis Scarcella and Stephen Chmill. Scarcella also purportedly obtained Washington's confession to the crime, a fact that Washington sharply contested during the trial. While under cross-examination, Scarcella alluded to the fact that Washington had been "ID'd," which testimony was particularly misleading in light of the eyewitness's undisclosed recantation. The prejudice was compounded by the fact that the eyewitness did not make an in-court identification of Washington during the trial. The DA noted that it would not seek to retry Washington, and that the CRU found no basis to disturb the convictions of the other six persons convicted in connection with the robbery.
By letter dated July 27, 2017, the petitioner, the New York Times Company (hereinafter the New York Times), made a FOIL request to the DA for 18 "final reports" of the CRU relating to individuals whose convictions in 18 criminal actions were vacated based upon the work of the CRU. By letter dated August 2, 2017, the DA's FOIL Records Access Officer denied the FOIL request on the ground that such reports are sealed pursuant to CPL 160.50 and, thus, fall outside of the ambit of FOIL disclosure.
By letter dated August 18, 2017, the New York Times administratively appealed the denial of its request to the DA's FOIL Appeals Officer, arguing, inter alia, that the CRU's final reports were not subject to sealing pursuant to CPL 160.50 because they do not risk stigmatizing the accused. In the alternative, the New York Times argued that the DA should release the CRU's final report pertaining to Washington, one of the individuals whose CRU final reports were sought in the initial FOIL request, because, on August 7, 2017, Washington had executed a form designating the New York Times as his agent for purposes of access to any sealed records concerning his conviction. Washington's form designating the New York Times as his agent to access any sealed records pertaining to his criminal case was annexed to the New York Times' letter.
By letter dated August 23, 2017, the DA's FOIL Appeals Officer affirmed the denial of the New York Times' initial FOIL request, finding that the CRU's final reports constitute official records within the meaning of CPL 160.50. However, the FOIL Appeals Officer found that Washington's CPL 160.50 waiver, which was presented to the DA for the first time as part of the New York Times' administrative appeal, entitled the New York Times to the CRU's final report prepared in Washington's case, subject to any other applicable FOIL exemptions. The FOIL Appeals Officer indicated that the FOIL request for Washington's CRU final report would be answered in a subsequent FOIL response.
By letter dated September 15, 2017, the DA provided the New York Times with a copy of the CRU's final report in Washington's case (hereinafter the Washington report). However, certain portions of the Washington report were redacted as (1) information of a personal nature regarding informants who did not testify at trial (see Public Officers Law §§ 87[2][b], [e], [f]; 89[2]); (2) material relating to grand jury proceedings (see Public Officers Law § 87[2][a]; Penal Law § 215.70; CPL 190.25[4][a]); and (3) constituting deliberative inter- or intra-agency materials (see Public Officers Law § 87[2][g]). By letter dated September 21, 2017, the New York Times appealed the redactions to the DA's FOIL Appeals Officer.
In a letter dated October 16, 2017, the FOIL Appeals Officer held that the New York Times was entitled to somewhat broader disclosure of the Washington report. The FOIL Appeals Officer upheld all redactions to the Washington report made on the ground that the content constituted deliberative inter- or intra-agency materials. The FOIL Appeals Officer also held, for the first time on administrative appeal, that these redactions were proper on the additional basis that the redacted material constituted attorney work product. Although the FOIL Appeals Officer found that names and statements made by nontestifying witnesses were properly subject to redaction, she concluded that the redactions made to statements of one witness, Derek Hill, who did not testify at Washington's trial, were improper, as that witness testified at the trials of Washington's codefendants. Accordingly, the FOIL Appeals Officer provided the New York Times with a less redacted copy of the Washington report.
Thereafter, the New York Times commenced this proceeding pursuant to CPLR article 78 to review the determinations of the DA's FOIL Appeals Officer pertaining to its FOIL requests. The New York Times sought disclosure of the 17 CRU final reports that the DA refused to disclose pursuant to CPL 160.50, i.e., the reports pertaining to exonerations of individuals other [*3]than Washington. In addition, the New York Times challenged the redactions made to the Washington report. The DA opposed the petition.
In a judgment entered May 24, 2018, the Supreme Court held that the 17 CRU reports relating to the exonerations of individuals other than Washington were exempt from FOIL, as those reports were sealed pursuant to CPL 160.50. With respect to the redactions to the Washington report made on the basis that the material constituted statements of nontestifying witnesses, the court remitted the matter to the DA to consider whether the statements were disclosable in light of Matter of Friedman v Rice (30 NY3d 461). The Supreme Court otherwise denied the petition and, in effect dismissed the proceeding.
The New York Times appeals [FN1]. We modify.
II. Final Reports Pertaining to Individuals Other Than Washington
FOIL "proceeds under the premise that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571). "By permitting access to official information long shielded from public view, the act permits the electorate to have sufficient information in order to make intelligent, informed choices with respect to both the direction and scope of governmental activities" (id. at 571; see Matter of Friedman v Rice, 30 NY3d at 475).
"FOIL requires that public agencies make available for public inspection and copying all records' except where they fall within one of the statute's enumerated exemptions" (Matter of Kosmider v Whitney, 34 NY3d 48, 54, quoting Public Officers Law § 87[2]). "[Courts] typically construe exemptions narrowly, and an agency has the burden of demonstrating that an exemption applies by articulating a particularized and specific justification for denying access'" (Matter of Kosmider v Whitney, 34 NY3d at 54, quoting Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566).
Public Officers Law § 87(2)(a), the FOIL exemption the DA relies upon to withhold access to the CRU's final reports, provides that an agency may deny access to records that "are specifically exempted from disclosure by state or federal statute." Invoking that FOIL exemption, the DA cites CPL 165.50, which provides that, except in certain circumstances not relevant to this appeal, "[u]pon the termination of a criminal action or proceeding against a person in favor of such person . . . the record of such action or proceeding shall be sealed" (CPL 160.50[1]). Here, there is no dispute that the criminal actions at issue terminated in favor of the exonerated individuals (see CPL 160.50[3][f]).
The decisive issue in this case is whether the CRU's final reports fall within the class of records required to be sealed. CPL 160.50 specifies that, where a criminal action or proceeding terminates in favor of the accused, "all official records and papers . . . relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed" (CPL 160.50[1][c]). Such records "shall be sealed and not made available to any person or public or private agency" (id.). However, such records "shall be made available to the person accused or to such person's designated agent" (CPL 160.50[1][d]). Further, such records may be made available to third parties in a number of precisely enumerated instances that are not relevant to this appeal (see CPL 160.50[1][d][i]-[vi]).
The New York Times argues that the statutory purpose behind CPL 160.50 is to remove the stigma flowing from an accusation of criminal conduct, and that purpose would not be served by sealing the CRU's final reports. Building upon that argument, the New York Times contends that the CRU final reports do not relate to the "arrest or prosecution" of the exonerated individuals because the reports were not generated in furtherance of the prosecution or arrest of the individuals, but rather, for the purposes of exonerating them. Additionally, the New York Times argues that access to the reports will serve broader public purposes by allowing the public to assess whether officers and prosecutors committed misconduct during the original prosecutions of the exonerated individuals and to determine whether the CRU's conviction review process itself is just [*4]and fair.
The DA counters that the CRU reports do in fact relate to the prosecution of the exonerated individuals, in that they involve prosecutorial judgment as to whether to stand by, or consent to vacatur of, a conviction. The DA notes that in many cases, the conclusions of the reports were not that the individuals were innocent, but that they did not receive a fair trial. Thus, the DA argues that the content of the reports may be stigmatizing to the exonerated individuals, notwithstanding the vacatur of their convictions.
For the reasons that follow, we agree with the DA's interpretation of CPL 160.50 and hold that the CRU's final reports constitute records relating to a prosecution that are subject to sealing.
CPLR 160.50 "serves the laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his [or her] having once been the object of an unsustained accusation" (Matter of Hynes v Karassik, 47 NY2d 659, 662). "[T]he legislative objective was to remove any stigma' flowing from an accusation of criminal conduct terminated in favor of the accused, thereby affording protection (i.e., the presumption of innocence) to such accused in the pursuit of employment, education, professional licensing and insurance opportunities" (People v Patterson, 78 NY2d 711, 716).
CPL 160.50 does not define what constitutes an official record relating to an arrest or prosecution, and the Court of Appeals has held that "bright line rules are not wholly appropriate in this area" (Matter of Harper v Angiolillo, 89 NY2d 761, 766). Thus, for example, where a defendant was charged with bribing a police officer, a tape recording of the defendant speaking to the officer, which was integral to his arrest and prosecution, was an official record subject to sealing pursuant to CPL 160.50 (see Matter of Dondi, 63 NY2d 331, 337-338). By contrast, where a police officer was unsuccessfully prosecuted for stealing money and falsifying records of his police department, property tags and logs demonstrating the chain of custody of evidence seized by that officer from persons he arrested were held to not constitute official records subject to sealing, since those items were created in the police department's regular course of business (see Matter of City of Elmira v Doe, 39 AD3d 942, 945, affd 11 NY3d 799).
Here, it is abundantly clear that the CRU's final reports constitute official records created in connection with the arrest and prosecution of the persons whose convictions were ultimately vacated through the conviction review process. At the time the reports were created, the subjects of the reports stood convicted as the result of prosecutorial action. The reports are "official records" in that they were created by the DA's office itself for the purpose of scrutinizing the propriety of each of the subject convictions.
The New York Times' claim that the CRU's reports are not stigmatizing is misplaced. The mere vacatur of a conviction does not erase the stigmatizing nature of being subjected to the criminal justice process. "That detriment to one's reputation and employment prospects often flows from merely having been subjected to criminal process has long been recognized as a serious and unfortunate by-product of even unsuccessful criminal prosecutions" (Matter of Hynes v Karassik, 47 NY2d at 662 [emphasis added]). Indeed, it is common knowledge that merely being associated with criminal activity may damage a person's reputation. The now-public portions of the Washington report, which are not flattering to him, serve to illustrate this point.
Contrary to the New York Times' contention, that the CRU's reports might serve a broader public purpose in leading to reform of police agencies or prosecutors' offices, is not a basis to overlook the protections endowed by CPL 160.50 to the individuals exonerated through the CRU's work. Notably, the New York Times is not without a remedy to access the remaining reports—it may seek CPL 160.50 waivers from each of the exonerated individuals to access their sealed records, precisely in the same manner as it obtained a waiver from Washington. However, CPL 160.50 vests the right to unseal official records of a prosecution with the individual whose conviction was vacated, and it is for that individual to weigh and decide whether the disclosure of such records for the public purposes cited by the New York Times is worth the potential stigma associated with the public's access to those records.[FN2]
Accordingly, we hold that absent a CPL 160.50 waiver, the CRU's final reports are not subject to disclosure pursuant to FOIL.
III. The Washington Report
The New York Times also challenges the redactions made by the DA to the Washington report on the grounds that the material constituted deliberative inter- or intra-agency materials (see Public Officers Law § 87[2][g]), attorney work product shielded from disclosure (see Public Officers Law § 87[2][a]; CPLR 3101[c]), or material related to grand jury proceedings (see Public Officers Law § 87[2][a]; Penal Law § 215.70; CPL 190.25[4][a]). Contrary to the DA's contentions, the New York Times' petition broadly challenged and incorporated by reference the DA's justifications for these redactions, including the FOIL Appeals Officer's belatedly invoked attorney work product justification, which was not given as a basis for the DA's initial redactions to the Washington report. Accordingly, the New York Times' contentions in this regard are properly before this Court.
Although the aforementioned grounds are valid bases to redact material sought by FOIL request, we agree with the New York Times that, without an in camera review of the Washington report, it is impossible to determine whether the redacted material falls within those exemptions.
An agency to whom a FOIL request is made "does not have carte blanche to withhold any information it pleases. Rather it is required to articulate particularized and specific justification and, if necessary, submit the requested materials to the court for in camera inspection, to exempt its records from disclosure" (Matter of Fink v Lefkowitz, 47 NY2d at 571). As the Court of Appeals has instructed, "[i]f the court is unable to determine whether withheld documents fall entirely within the scope of the asserted exemption, it should conduct an in camera inspection of representative documents and order disclosure of all nonexempt, appropriately redacted material" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 275 [emphasis added]; see Matter of Gedan v Town of Mamaroneck, 170 AD3d 833; Matter of Mazza v Village of Croton-on-Hudson, 140 AD3d 878, 880; Matter of Newsday, LLC v Nassau County Police Dept., 136 AD3d 828, 830).
Accordingly, the judgment is modified, on the law, by deleting the provisions thereof denying those branches of the petition which were to review redactions to the Washington report made on the grounds that the material constituted deliberative inter- or intra-agency materials, privileged attorney work product, or material related to grand jury proceedings and, in effect, dismissing those portions of the proceeding, and substituting therefor provisions granting those branches of the petition to the extent that the DA is directed to produce the unredacted Washington report for an in camera inspection by the Supreme Court, Kings County; as so modified, the judgment is affirmed insofar as appealed from, and the matter is remitted to the Supreme Court, Kings County, for a new determination of those branches of the petition based upon that in camera inspection.
MASTRO, J.P., MALTESE and IANNACCI, JJ., concur.
ORDERED that the judgment is modified, on the law, by deleting the provisions thereof denying those branches of the petition which were to review redactions to the final report of the Kings County District Attorney's Conviction Review Unit relating to the exoneration of Jabbar Washington made on the grounds that the material constituted deliberative inter- or intra-agency materials, privileged attorney work product, or material related to grand jury proceedings and, in effect, dismissing those portions of the proceeding, and substituting therefor provisions granting those branches of the petition to the extent that the respondent is directed to produce the unredacted final report relating to the exoneration of Jabbar Washington for an in camera inspection by the Supreme Court, Kings County; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for a new determination of those branches of the petition based upon that in camera inspection.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: The New York Times does not appeal from so much of the judgment as remitted the matter to the DA for a further review of whether redactions were properly made on the basis that the material constituted statements of nontestifying witnesses and, therefore, we do not review that portion of the judgment.

Footnote 2: To the extent that any of the individuals who were exonerated through the CRU's work are no longer living, CPL 160.50 makes no exceptions for the release of the sealed records from their cases. Whether those deceased individuals' records are disclosable pursuant to some other procedural mechanism is beyond the scope of this appeal.